## The City of Detroit v. Henry Weber and others.

*City treasurer : Official bond : Sureties.* The sureties on the official bond of a city treasurer are liable only for the defaults of their principal during the term for which their bond was given ; and where such principal has held the office for preceding terms their liability is to be determined by considering the term for which they were sureties by itself, precisely as if he had succeeded some other person, and then requiring them to account for all the public money that came to his hands during that term.

*False entries : Forced balance : Sureties.* Sums actually paid during one term are not to be disallowed to the sureties for that term because their principal in stating his account at the close of the previous term had credited himself with the same sums by false entries upon his books made to assist in forcing a balance.

*Principal and agent : Sureties.* A defaulting agent cannot make good his default, as between himself and his sureties on the one hand and his principal on the other, by taking the principal's money for the purpose.

*Heard January 14. Decided January 27.*

Error to Wayne Circuit.

*D. C. Holbrook, City Counselor*, for plaintiff in error.

*Moore & Griffin, G. V. N. Lothrop* and *Theodore Romeyn,* for defendants in error.

COOLEY, J.

This is a suit against the sureties on the official bond

of Edward S. Leadbeater as treasurer of the city of Detroit. Leadbeater was treasurer for three successive terms, and the evidence is believed to establish the fact that he was a defaulter during each term. The question here relates not to the amount of his defalcations, but to the apportionment of liability as between the sureties in the several bonds. These defendants were sureties in the third bond. It seems to have been proved at the trial that the defalcation at the end of the second term was twenty-three thousand one hundred and twenty-four dollars and twenty-eight cents, which was represented on the treasurer's books by four fictitious entries by means of which a balance was forced. The fictitious items were the following:

| | |
|---|---:|
| Advances | $5,000 00 |
| Cash in safe | 7,321 82 |
| Paid board of education | 6,468 09 |
| Paid metropolitan police board | 4,334 37 |
| Total | $23,124 28 |

Leadbeater died during his third term, and it was then found that his defalcation was twenty-three thousand five hundred and eighteen dollars and fifty-two cents, that is to say, that it had increased in the term for which defendants were sureties three hundred and ninety-four dollars and twenty-four cents. For this sum and the interest upon it, defendants are liable; but it is plain that if all the defalcations which existed when the third term commenced still continued to exist to his death, they cannot be liable further, because in that case there could have been no default in the third term beyond the sum last mentioned.

It is not pretended, as I understand it, that any default of Leadbeater during the second term was made up in the third, unless by taking city moneys for the purpose. Certainly the evidence would not have warranted the jury in finding it was made good in any other way. But the idea that a defaulting agent may make good his default, as between himself and his sureties on the one hand and

his principal on the other, by taking the principal's money for the purpose, is one which needs no refutation. I think the jury were right in finding the defendants liable only for the increase in the default which took place during the third term.

The most satisfactory method of determining the liability of these sureties is to take Leadbeater's third term and consider it by itself just as we should if he had succeeded some other person instead of being his own successor, and then require them to account for all the public money that came to his hands during that term. As that was all they undertook to do by the bond, that is all that can be required of them in this suit. The evidence enables us to do this without difficulty, and we can state the account as follows:

Amount appearing by the books to have been received during the third term_____$1,524,279 28
But this includes two fictitious items as having been passed to him from the preceding term as follows:

Advances_____$5,000 00
Cash in safe_____ 7,321 82
                          $12,321 82

Deducting which leaves actual sum received_$1,511,957 46

This is the sum these sureties must account for.
The books show payments to_____$1,479,262 86
But the city authorities show that certain sums were in fact not paid which aggregate_____ 14,871 92

Leaving actual payments of_____$1,464,390 94
Add cash which after Leadbeater's death came to the hands of his successor_____ 36,369 82
It is further shown that during the third term the following sums were paid by the treasurer, which he had falsely credited as paid in the preceding term:

To the board of education_____ 6,468 09
To the police board_____ 4,334 37

These sums make a total of_____$1,511,563 22

Showing a deficiency of $394 24, which is in accordance with the finding of the jury.

The city insists that these last two items should not be allowed to these sureties because Leadbeater had already taken credit for them in the preceding term. But that credit, as before stated, was a fictitious one, and made to assist in forcing a balance. What have these sureties to do with his fictitious entries made at a time when they had not agreed to be responsible for his good conduct? What right have they even to inquire into his previous official action if he accounts according to law for all he receives while they stand his sureties? As already stated, the case is no different from what it would have been if Leadbeater had succeeded another person. Suppose that to have been the case, and these sureties had shown that their principal had lawfully paid or accounted for all the money received by him except the small balance above stated; would any one pretend that the fact that certain amounts which he had paid over to boards entitled by law to receive them, were falsely stated in the accounts of his predecessor to have been previously paid, could preclude these sureties having credit for them?

This case, because of its very peculiar circumstances, is capable of assuming very deceptive appearances, but in any light that I have been able to regard it the claim of the city is an attempt to fix upon these defendants the responsibility for official defaults with which they have no more concern than any other citizens.

I think the rulings of the circuit judge were correct, and the judgment should be affirmed, with costs.

GRAVES, CH. J., concurred.

CAMPBELL, J.

I think the judgment below cannot be allowed to stand without practically leaving the city without any redress for the frauds committed during the treasurer's last term. His

present sureties are only responsible for his doings during that term. But for all of his acts and omissions during that period I think their liability is precisely the same as his in all respects. And there is no reason for exonerating them in preference to any others, or in preference to him.

It is not to be forgotten that the treasurer's bond is conditioned, not merely for a just application and safe keeping of funds, but also for the faithful performance of all of his duties. This includes the keeping of his accounts and books truly. He is the only person who is entrusted with the means of keeping a record of the exact condition of his office. The city has a right, and it is necessary for the public security, to assume that all money charged by himself to himself during the term has been in his hands during the term, and that he has paid out no more than the vouchers for the term show to have been paid. As he always had it in his power to keep the specific cash received wherever he chose to put it, there is no other rule that would be safe or reasonable. And his sureties cannot complain that his representations against himself are acted upon. They are official statements and entries in the course of official duty, and, at least against himself, the best possible evidence, and probably the only evidence generally attainable with certainty.

If an incoming treasurer deliberately charged himself with money on hand as received from his predecessor, knowing positively whether he had received it or not, neither he nor his sureties could set up in exoneration that he had made a willfully false entry. It would be as distinct a breach of duty to cover up a fraud as to misapply money in any other way. In the present case there was distinct evidence that the money alleged to be on hand at the beginning of the term had been received and not otherwise accounted for, and I think the treasurer's entry of it as cash on hand, was not only not disproved, but under such circumstances conclusive.

But in the view I take of the other questions this becomes of minor importance.

It appears from the entries that during his third term he had increased an item called "*advances*" from five thousand dollars to eight thousand three hundred and forty-six dollars and sixty cents. This item consisted of money unlawfully borrowed for his own use and not returned. The sum of three thousand three hundred and forty-six dollars and sixty cents was thus embezzled during the term. In other words, his cash was short to that extent, and made so because he used it himself. I am entirely unable to see how it is possible for his sureties to avoid the responsibility of replacing this sum. It was so much money which he admitted belonged to the city, and there could be no possible reduction of it.

A further amount of fourteen thousand eight hundred and seventy-one dollars and ninety-two cents is included among the disbursements of his third term for various municipal funds, including police, school, and other purposes, which it appears he drew unlawfully for himself and not for those funds, and the entries are false entries. The moneys belonged to the payments of that term, and were so charged, and upon his books those funds stood charged with the amounts. These amounts the city will still be compelled to pay or lose, and if those payments had not been made the money would have been in the treasury credited where it belonged among the receipts and funds subject to draft for that period. Every dollar of this deficiency was created during the third term and existed when that term ended. If suit had been brought at once for each one of these embezzlements, no one can question the liability of his bondsmen. I cannot perceive how that liability has been destroyed, since no one of them has been rectified.

In the court below they were allowed credit for ten thousand eight hundred and two dollars and forty-six cents, which the treasurer applied to making good an old embezzlement of a previous term. The city already stood charged with that amount as paid when it had not been paid. It was not an amount advanced for the benefit of the city, but for his

Detroit v. Weber.

own benefit, to make good an old default. It was not credited to the city on the books so as to increase its balance against him, which would have been the true and proper course, and then drawn out on the proper vouchers, but left to stand where it had been. It does not appear as a new payment in any shape, and so far as the city is concerned it was not a new payment. It never went into the city treasury at all.

It does not decrease the deficiency of the last term a single penny. That still continues at its full amount, and upon what principle it can be thrown back on the old sureties so as to relieve the new ones, I cannot comprehend. They are as much entitled to protection as their successors, and when money is paid for the specific purpose of discharging a debt for which they were liable, it is not only within the power of the debtor to pay on what debt he chooses, but it is not inequitable, when choice must be made between two sets of sureties, to protect the parties chosen.

Paying an old debt does not discharge a new one. The moneys which the treasurer appropriated unlawfully during his last term were embezzlements of that term and of no other, and his sureties once liable for money thus taken could only be discharged when he or they should make good the specific sums falsely charged as made to the uses for which they should have been applied.

I think there was nothing which could warrant any reduction of any of the sums embezzled during the third term, amounting to eighteen thousand five hundred and eighteen dollars and fifty-two cents.

This amount was actually taken, and none of it applied where it purported on the books to have been applied. The sureties should be compelled to make the account good as it would have been without the embezzlements.

Christiancy, J., did not sit in this case.