PEOPLE *v.* DeHAVEN.

**1. JURY—PREJUDICE—DISQUALIFICATION—VOIR DIRE—FAIR TRIAL.**

When matters which might establish prejudice or work a disqualification of a juror are actually gone into upon the *voir dire* examination and false answers are given or deception is otherwise practiced, as the result of which a juror, although disqualified in fact, is accepted, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial is entitled to a new trial upon proper showing of such facts even though the bias or prejudice is not shown to have cause an unjust verdict, since such party through no fault of his own has been deprived of his constitutional guaranty of a trial by a fair and impartial jury.

**2. SAME—EXAMINATION AS TO COMPETENCY.**

Examination into the competency of a juror, when he is challenged, is essentially a taking of such prospective juror's testimony to determine whether he has the statutory qualifications of a juror and is free from prejudice or interest, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am. Jur., Jury, § 108.

[3] 31 Am. Jur., Jury, §§ 109, 110.

[4] 31 Am. Jur., Jury, § 133 *et seq.*

[4] Statutory grounds for challenge of jurors for cause as exclusive of common-law grounds. 64 A.L.R. 645.

[4] Competency of juror as affected by his participation in case of similar character. 160 A.L.R. 753.

[5, 6] 31 Am. Jur., Jury, §§ 4, 56.

[7] 31 Am. Jur., Jury, §§ 134–136.

[7] Implied bias or interest because of relationship to one who would be subject to challenge for that reason, challenge of proposed juror for. 86 A.L.R. 118.

3. SAME—COMPETENCY—EVIDENCE.

A prospective juror is not the judge of his own competency, impartiality, and freedom from prejudice, in that his own testimony must be accepted as final and conclusive, the matter being left to the determination of the court or triors who are not bound by his testimony but may rely on other evidence.

4. SAME—COMPETENCY—INTEREST IN ANOTHER SUIT OF SAME CHARACTER.

Independently of statute a juror is incompetent on the ground of bias if he is a party to, or interested in, another suit of the same character or involving the same controversy.

5. SAME—CONSTITUTIONAL LAW.

The right to be tried by an impartial jury is a constitutional guaranty (Const. 1908, art. 2, § 19).

6. SAME—CONSTITUTIONAL LAW—IMPARTIAL JURY.

The "impartial jury" guaranteed by the Constitution is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged and, further, consists of 12 impartial men (Const. 1908, art. 2, § 19).

7. SAME—RAPE—RELATIVES OF PREVIOUSLY CONVICTED RAPIST—VOIR DIRE—IMPARTIAL JURY.

In trial of defendant, charged with the rape of his 13-year-old stepdaughter, where two jurors were related to a man who had committed rape upon his 13-year-old daughter as well as four other daughters but failed to disclose such relationship upon *voir dire* examination, defendant was deprived of his right to trial by an impartial jury (Const. 1908, art. 2, § 19; Act No. 328, § 520, Pub. Acts 1931).

Appeal from Allegan; Miles (Fred T.), J. Submitted April 15, 1948. (Docket No. 78, Calendar No. 43,815.) Decided May 18, 1948.

Henry DeHaven was convicted of statutory rape. Reversed and new trial granted.

*Leo W. Hoffman,* for appellant.

*Eugene F. Black,* Attorney General, and *Chester A. Ray,* Prosecuting Attorney, for the people.

Sharpe, J. The defendant, Henry DeHaven, was tried and convicted of having committed the crime of rape upon Marilyn Kahre his 13-year-old step-daughter.*

Defendant married Ethel DeHaven, mother of the complaining witness, in December, 1941. At that time Marilyn was living with her grandparents in Indiana. Shortly after his marriage, defendant, his wife and Marilyn moved to Indiana where they lived until November, 1945, when they moved to a farm in Allegan county, Michigan. At the trial, the complaining witness testified that she had sexual relations with defendant in Indiana and from 4 to 10 times while they lived on the farm in Allegan county. She testified that on the afternoon of December 1, 1946, she and defendant climbed a ladder to an open room under the roof of the barn, remained there about 15 or 20 minutes and had sexual intercourse.

The cause was submitted to a jury who returned a verdict of guilty. Defendant made a motion for a new trial and among the reasons given are the following:

"Because the juror, William Haverdink, failed to disclose when examined by the court that a member of his family had been sentenced to life imprisonment for a similar offense.

"Because the juror, John Bouws, failed to disclose in response to the question by the court that a member of his family had been sentenced for life for a similar offense."

The trial court denied the motion for a new trial and defendant appeals alleging as reasons therefor the errors as claimed in the motion for a new trial.

---

* See Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–520, Stat. Ann. § 28.788).—Reporter.

When the cause came on for trial, the court read the information to the jury and explained the meaning of the crime of statutory rape. He then questioned the jurors as a group as to whether any of them had any experience with any criminal case and as to whether any of their relatives had been involved in a similar case or any case involving the crime of rape. All 12 jurors answered in the negative. One of the jurors in the jury box at that time was John Bouws. A juror was excused and a juror by the name of William Haverdink was sworn and took his place. The court then asked the following questions and received the following answers:

"*The Court:* Mr. Haverdink, you heard my questions?

"*Mr. Haverdink:* I did.

"*The Court:* And you know anything about the case?

"*Mr. Haverdink:* I do not.

"*The Court:* Know any of the parties?

"*Mr. Haverdink:* No.

"*The Court:* Have any business with any of the attorneys?

"*Mr. Haverdink:* No, I didn't.

"*The Court:* Do you know of anything that might interfere with your fair and impartial trial of this kind of case?

"*Mr. Haverdink:* I don't.

"*The Court:* There is nothing about anything that has happened to any members of your family that would make you feel different about this case than others?

"*Mr. Haverdink:* No.

"*The Court:* You feel in this case you could sit in this case fairly and impartial?

"*Mr. Haverdink:* I can.

"*The Court:* There is no other case you heard about or know about would influence your verdict in any way?

"*Mr. Haverdink:* No.

"*The Court:* Do you have a daughter, do you?
"*Mr. Haverdink:* I have daughters, but they are all married.
"*The Court:* Well, you think that would make any difference in this case?
"*Mr. Haverdink:* It wouldn't.
"*The Court:* Do you know any of these parties I have named here as witnesses?
"*Mr. Haverdink:* No, I don't.
"*The Court:* Have you any challenge now?
"*Mr. Ray:* No."

The jury, including the jurors Haverdink and Bouws, was then sworn and the trial proceeded. It appears that the juror Haverdink is a cousin and the juror Bouws is a brother-in-law to a man named William Haverdink who was sentenced for statutory rape by the circuit court of Ottawa county in 1939. The record in that case discloses that William Haverdink committed rape upon his 13-year-old daughter as well as four other daughters.

The trial court in denying the motion for a new trial stated in regard to the failure of juror William Haverdink to disclose that a member of his family had been sentenced to life imprisonment for a similar offense:

"He was not asked this question; he was under no obligation to disclose such fact; he stated he had no prejudice in this kind of a case; there is nothing to indicate he did have; certainly, if he did have, it would be likely to benefit respondent."

The trial court gave a similar answer to the failure of John Bouws to make such disclosure.

In 39 Am. Jur. pp. 65, 66, § 45, under the subject of "New Trial" we find the following:

"It seems generally agreed that when matters which might establish prejudice or work a disqualification of a juror are actually gone into upon the *voir dire* examination and false answers are given or

deception is otherwise practiced, as the result of which a juror, although disqualified in fact, is accepted, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though, it has been held, the bias or prejudice is not shown to have caused an unjust verdict; it is sufficient that a party, through no fault of his own, has been deprived of his constitutional statutory guaranty of a trial of his case before a fair and impartial jury."

In 31 Am. Jur. pp. 638, 639, § 109, under the subject of "Testimony of Juror as to Own Competency" we find the following:

"Examination into the competency of a juror, when he is challenged, is essentially a taking of such prospective juror's testimony to determine whether he has the statutory qualifications of a juror and is free from prejudice or interest, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. * * * He is not, however, the judge of his own competency, impartiality, and freedom from prejudice, in the sense that his testimony is to be accepted as final and conclusive of the issue, and no statute can clothe him with such judicial discretion and power. His competency is left to the determination of the court or of triors, who are not bound by his testimony but may rely on other evidence."

In *Durham* v. *State,* 182 Tenn. 577 (188 S. W. [2d] 555, 160 A. L. R. 746), defendant Durham was convicted of rape. On motion for a new trial the fitness of two jurors was challenged. It appears that upon the examination of the jurors, juror Meador failed to disclose that he was the prosecuting witness in a prosecution for assault with intent to rape and at one time had been convicted and served a term in prison.

In reversing the conviction, the court quoted from 35 C. J. p. 333, as follows:

" 'Independently of statute a juror is incompetent on the ground of bias if he is a party to, or interested in, another suit of the same character or involving the same controversy.' "

In *People* v. *Troy,* 96 Mich. 530, defendant was convicted of the crime of assault with intent to do great bodily harm less than the crime of murder. It appears that on the night in question one Flanders and Ottobein were engaged in a street fight, when a police officer appeared and arrested Flanders. While the officer was arresting Flanders, defendant Troy threw a stone and struck the officer. Defendant Troy was arrested, tried, and convicted. At the same term that defendant was brought to trial, seven of the jurors who sat in Flanders' case were permitted, under objection, to sit in the case against Troy. In reversing the conviction, the Supreme Court said:

"We think, however, that the court erred in permitting the jurors who sat in the Flanders case to sit in the present. The facts are nearly identical, and must necessarily have all been called forth in the Flanders trial. The jury in that case must have considered them, and reached some opinion as to the merits of the controversy in the present case. The respondent was entitled to a fair and impartial trial by an impartial jury, who had no preconceived opinions of his guilt or innocence. We are aware that some English and American authorities hold that jurors who have sat in one case are not disqualified from sitting in a case against another joint respondent, who has taken a separate trial, and involving the same state of facts. We are not inclined to follow that doctrine. Where the issue is the same in both cases, it is but fair to the respondent that he have another panel of jurors to try his cause."

The right to be tried by an impartial jury is a constitutional guaranty.* We find ourselves in harmony with the meaning of that term as quoted from 20 Words and Phrases (Perm. Ed.), p. 191, in *Durham* v. *State, supra:*

" 'The "impartial jury" guaranteed by constitutional provisions is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged' and further, 'consists of twelve impartial men.' "

See, also, *Lane* v. *State,* 168 Ark. 528 (270 S. W. 974) ; and *Stephens* v. *People,* 38 Mich. 739.

In the case at bar the jurors stated on *voir dire* examination that they could fairly and impartially sit as jurors in the case; and that there was no other case that they had heard about which would influence their verdict. At the time jurors Bouws and Haverdink were making these statements, they must have known that a relative of theirs had pleaded guilty to the crime of rape on his 13-year-old daughter. It can readily be seen why they did not want to acknowledge relationship to a confessed rapist, but their obligation and duty as jurors transcends in importance their hesitancy in admitting such relationship. The normal person revolts at the thought of a father or stepfather raping a 13-year-old girl. We are of the opinion that the relationship of these two jurors to one who had committed a similar crime was such that it deprived them of the capacity to act impartially. Defendant has the right to a trial by an impartial jury. We cannot say that he had such a trial.

---

* See Const. 1908, art. 2, § 19.—Reporter.

Other claimed errors have been advanced why a new trial should be granted, but we do not deem it necessary to discuss them.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

Bushnell, C. J., and Boyles, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.