PEOPLE v LARRY SMITH

Docket No. 45107. Submitted June 4, 1980, at Grand Rapids.—Decided May 6, 1981.

Larry M. Smith was convicted of assault with intent to commit great bodily harm less than murder and possession of a firearm during the commission of a felony, Calhoun Circuit Court, Stanley Everett, J. Defendant appeals, alleging several errors. *Held:*

1. The issuance of the warrant for defendant's arrest by a magistrate who was not an attorney did not divest the court of its jurisdiction over the defendant, nor does the determination of probable cause to arrest and the issuance of an arrest warrant by a magistrate who is not an attorney violate the defendant's right to due process.

2. The defendant lacks standing to attack the search of an automobile in which he was a passenger and the seizure of a firearm from the vehicle. His mere presence in the vehicle, with no assertion of a property or possessory interest in either the vehicle or the firearm, did not furnish him with a reasonable expectation of privacy in the area searched.

3. The seized firearm was properly admitted into evidence

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 7, 116, 117.

[2] 5 Am Jur 2d, Arrest §§ 2, 10.

[3] 29 Am Jur 2d, Evidence § 418.

Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search. 78 ALR2d 246.

[4] 29 Am Jur 2d, Evidence § 228.

[5] 58 Am Jur 2d, New Trial § 206.

76 Am Jur 2d, Trial §§ 1219, 1223, 1233.

Juror's presence at or participation in trial of criminal case (or related hearing) as ground of disqualification in subsequent criminal case involving same defendant. 6 ALR3d 519.

Admissibility and effect, in criminal cases, of evidence as to juror's statements, during deliberations, as to facts not introduced into evidence. 58 ALR2d 556.

[6] 58 Am Jur 2d, New Trial § 42.

Juror's voir dire denial or nondisclosure of acquaintance or relationship with attorney in case, or with partner or associate of such attorney, as ground for new trial or mistrial. 64 ALR3d 126.

even though there was no proof that it was the weapon used in the assault. There was sufficient testimony regarding the similarity of the weapon with that used in the assault to overcome an objection on the basis of lack of relevance and to allow an inference that the weapon had been in defendant's possession at the time of his arrest.

4. It is alleged that a juror may not have been impartial because the juror was endorsed as a prosecution witness in a similar criminal case at the time of this defendant's trial and later testified in that case. Because it is unclear whether the juror was aware that he was to be a witness in the other case, this case is remanded for an evidentiary hearing on the matter.

5. Questioning by the prosecutor regarding the defendant's use of marijuana and alcohol on the evening of the assault was relevant, and the trial court's instruction to the jury on the use of such evidence was proper.

Remanded for further proceedings.

1. CRIMINAL LAW — MAGISTRATES — JURISDICTION OF COURT.

A claim attacking the authority of a magistrate to determine probable cause and issue a warrant for a defendant's arrest is not considered to be timely unless asserted prior to the swearing of the jury; the trial court obtains jurisdiction over a defendant by the appearance of the defendant at trial.

2. CRIMINAL LAW — MAGISTRATES — DUE PROCESS.

The Fourth Amendment guarantee of due process is not violated where magistrates rather than courts determine probable cause to arrest and issue arrest warrants (US Const, Am IV).

3. SEARCHES AND SEIZURES — EXPECTATION OF PRIVACY — AUTOMOBILE PASSENGERS.

A passenger in an automobile, who asserts neither a property nor a possessory interest in the automobile nor in evidence seized from the automobile, has no reasonable expectation of privacy in the automobile when searched and, therefore, lacks standing to attack the search and seizure.

4. CRIMINAL LAW — EVIDENCE — WEAPONS.

Weapons or tools that might have been used to commit a crime and which are found in the accused's possession at the time of his arrest may be introduced into evidence without proof that they were the very weapons or tools used in the crime.

5. JURY — IMPEACHMENT OF VERDICT — IMPARTIAL JURORS.

Affidavits of jurors or of third parties are inadmissible to impeach

the jury verdict if they dispute matters which inhere in the verdict, such as juror thought processes and interjuror inducements, but are admissible if they pertain to outside or extraneous influences; an attack on the impartiality of a juror by showing that he was a prosecution witness in a similar criminal case at the time of trial consists of revealing an undisclosed extraneous influence.

6. JURY — NEW TRIAL — IMPARTIAL JURORS.

A party moving for a new trial because of a juror's possible lack of impartiality must present proof of actual prejudice or must establish to the satisfaction of the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James D. Norlander,* Prosecuting Attorney, and *John H. MacFarlane,* Assistant Prosecuting Attorney, for the people.

*Richard B. Ginzberg,* Assistant State Appellate Defender, for defendant on appeal.

Before: R. B. BURNS, P.J., and MACKENZIE and J. T. KALLMAN,* JJ.

PER CURIAM. On January 23, 1979, defendant was convicted by a jury of assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to consecutive terms of five to ten years on the assault conviction and two years on the felony-firearm conviction and appeals as of right.

Defendant initially attacks the constitutionality of the statutory procedure whereby a nonattorney

* Circuit judge, sitting on the Court of Appeals by assignment.

magistrate made a finding of probable cause and issued a warrant for defendant's arrest. MCL 600.8507; MSA 27A.8507. Defendant contends that this procedure not only deprived him of due process of law, but violated Const 1963, art 6, § 19, by allowing a person not licensed to practice law to perform a judicial function. The result, according to defendant, was that the court lacked jurisdiction *ab initio* to try defendant for the offenses charged.

In support of his argument, defendant cites *People v Colleton,* 59 Mich 573; 26 NW 771 (1886). In that case, not only was the arrest warrant issued by the clerk of the police court, but the trial and conviction were had before the clerk as well. Faced with those facts, the Michigan Supreme Court held:

"We think the position taken by defendant's counsel is correct upon both grounds: Section 1, Art 6, Const; Pub Acts 1885, p 125, § 5; How Stat §§ 2280, 7093; *People v Lynch,* 29 Mich 27[4] [1874]; *Morton v Crane,* 39 Mich [526] 530 [1878].

"The prosecution of the defendant, for the offense charged, could only be had in some court of competent jurisdiction, the existence of which is authorized by the Constitution, and the taking of the complaint, and the examination of witnesses, and the determination therefrom whether or not the offense has been committed, preliminary to issuing the warrant, involve judicial action, which can only be taken by a court, and which cannot be performed by a clerk; neither can the power to perform it be conferred upon that officer.

"The verdict in the case must be set aside, and the proceedings dismissed, and the defendant discharged." *People v Colleton, supra,* 575-576.

In the case at bar, defendant attacks only the authority of the magistrate to make a determina-

tion of probable cause and issue a warrant for defendant's arrest. Such a claim is not considered timely unless asserted prior to the swearing of the jury. *People v Curran,* 191 Mich 583; 158 NW 212 (1916), *People v Vurrill,* 391 Mich 124; 214 NW2d 823 (1974). Although defendant attempts to avoid this defect by ingeniously arguing that the court lacked jurisdiction *ab initio, Curran, supra,* 588-589, is authority for the proposition that jurisdiction is obtained by the appearance of a defendant before a proper tribunal at trial:

"We do not deem it necessary to pass upon the question whether such recital may or may not be contradicted. We think that the question of the jurisdiction of the examining magistrate was not a proper issue upon the trial of the case upon its merits. After the arraignment of the defendant, the entry of the plea of not guilty, and the impaneling and swearing of the jury, it was too late to raise a question of the jurisdiction of the justice. The issue before the jury was the guilt or innonence of the defendant. The impropriety of going into such a collateral question as the jurisdiction of the justice is clearly shown by the examination of the justice himself, who, at the most, is uncertain as to .whether he swore the man Aldrich himself, or whether the clerk swore him. The jurisdiction of the circuit court, obtained in the manner above stated, could not be destroyed because the complaining witness testified that he did not have personal knowledge of all the facts stated in the complaint. To permit this would be to allow oral testimony taken, as in this case, long after the complaint was made, to oust the court of jurisdiction given in the manner provided by the statute. We are therefore clearly of the opinion that this motion, even if there were any merit in it, ought to have been made before the jury were sworn. This entire subject-matter was outside the merits of the case. After the jury had been sworn and the trial of the issue as to the guilt of the defendant had been begun, it was too late to raise the objection as to the proceedings before

the justice. This has been so often ruled by this court that it hardly seems necessary to cite cases. The real merit of the matter is, that all preliminary questions about the jurisdiction of the justice should have been settled before the jury were sworn. It was not a matter which went to the merits of the trial. *People v Schottey,* 66 Mich 708 (33 NW 810) [1887]; *People v Haas,* 79 Mich 449 (44 NW 928) [1890]; *People v Payment,* 109 Mich 553 (67 NW 689) [1896]."

Similarly, we reject defendant's argument that the use of magistrates to determine probable cause and issue arrest warrants violates the Fourth Amendment to the United State Constitution. In *Shadwick v City of Tampa,* 407 US 345; 92 S Ct 2119; 32 L Ed 2d 783 (1972), the Court refused to invalidate an arrest warrant issued by a municipal court clerk where there was no showing that the clerk lacked neutrality or the ability to deduce probable cause to believe the offense had been committed based on the facts before him. Though *Shadwick* concerned the offense of impaired driving, we do not find that defendant has shown that magistrates are unable to make a knowing determination of probable cause for the offenses charged herein. Further, *Shadwick* and its progeny suggest that the remedy for such a defect is to quash the warrant and suppress any evidence obtained as a result of issuance of the warrant. As defendant does not argue that any evidence was illegally obtained due to the arrest warrant, he is not entitled to relief.

Next, defendant argues that the trial court erred in refusing to suppress evidence of a .22-caliber revolver found by police under the front seat of a car in which defendant had been a passenger. Defendant asserts neither a property nor a possessory interest in the automobile nor in the gun

seized. The mere fact that defendant was in a car with the owner's permission immediately prior to the search did not endow him with a reasonable expectation of privacy in the area searched. Defendant, thus, lacks standing to attack the search and seizure. *Rakas v Illinois,* 439 US 128, 148-149; 99 S Ct 421; 58 L Ed 2d 387 (1978). In *Rakas,* where the factual scenario paralleled that of the case at bar, the United States Supreme Court rejected the defendants' argument that their legitimate presence "on the premises" vested them with standing to attack the search.

"But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy. *Supra,* at 142." *Id.*

Defendant also argues that admission of the pistol into evidence was erroneous because a sufficient connection between the crimes charged and the weapon was not established. The thrust of defendant's position is that the evidence should have been excluded as irrelevant, MRE 401, as more unfairly prejudicial than probative, MRE 403, and as tending to show an unrelated crime or wrongful act, MRE 404(b).

At the hearing on defendant's motion to suppress the gun as evidence Sergeant David Clark of the Kalamazoo Township Police testified that the gun was found five days after the assault in a vehicle which had been occupied by defendant and five other individuals. Prior to the search of the

vehicle a rifle had been discovered after it apparently fell out of the front window of the car; additionally, in a *Terry*[1] patdown search, the officers found several .22-caliber bullets on defendant's person and a clip for a rifle on the person of another occupant. Because the officers concluded that the clip could not be used with the rifle which had been found, they searched the car for other weapons.

The .22-caliber pistol was found under the front seat on the right (passenger) side of the vehicle. The testimony indicated that the area was inaccessible from the front seat due to blockage by a power unit used to adjust the seat. Sergeant Clark testified that the gun was positioned about one foot under the front seat (measured from the back seat), pointing toward the dashboard with its handle toward the right rear door. The testimony also indicated that the rounds of ammunition on defendant's person would fit the gun. Sergeant Clark stated that when the vehicle was stopped, defendant, one of three persons in the back seat, had been closest to the right side and that the gun was most accessible to him. Neither the car nor the gun was identified by both persons whom defendant was charged with assaulting.

We find that the testimony of both complainants that they had seen the gun used in the assault from only several feet away and that it had a very similar appearance to the gun introduced into evidence was sufficient to overcome any objection on the basis of lack of relevance. MRE 401. Whether the gun was actually the weapon used in the assault was a question of weight for the jury. Moreover, as the people argue, "it is a well-established rule that where weapons or tools were used

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

to commit a crime, weapons or tools that might have been used to commit the crime found in the accused's possession at the time of arrest may be introduced without proof that they were the very weapons or tools in fact so used". (Footnote omitted.) *People v Hall,* 19 Mich App 95, 98; 172 NW2d 473 (1969). Evidence that the gun was found in an area of the vehicle most accessible to defendant, although not conclusive, allowed the jury to draw the reasonable inference that the gun had been in defendant's possession. Under these circumstances, we decline to interfere with the discretion of the trial judge. See *People v Triplett,* 68 Mich App 531, 536-537; 243 NW2d 665 (1976), *rev'd on other grounds* 407 Mich 510; 287 NW2d 165 (1980), *People v Howard,* 391 Mich 597, 603; 218 NW2d 20 (1974).

Subsequent to his trial and conviction defendant learned that one of the members of the jury was, at the time of trial, endorsed as a res gestae witness and later testified in an unrelated murder trial where the victim's death was caused by gunshots. Defendant's trial counsel has since filed an affidavit averring that had he been apprised of the juror's status as a witness at voir dire he would have exercised a peremptory challenge.

Recently, in *Hoffman v Monroe Public Schools,* 96 Mich App 256; 292 NW2d 542 (1980), one panel of this Court considered the question of whether an affidavit of a juror or a third party should be allowed to impeach the verdict of the jury. We agree with the panel's choice in favor of the "Iowa rule" which can be summarized as follows:

"Under this standard, affidavits are inadmissible to dispute matters which *inhere in the verdict,* such as juror thought processes and interjuror inducements, but are admissible if they pertain to *outside or extraneous*

*influences". Hoffman, supra,* 259, citing *Mattox v United States,* 146 US 140, 148-149; 13 S Ct 50; 36 L Ed 917 (1892), Mueller, *Juror's Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),* 57 Neb L Rev 920 (1978).

Applying the Iowa rule, an attack on the impartiality of a juror by showing that he was a prosecution witness in a similar criminal case at the time of trial consists of revealing an undisclosed extraneous influence rather than attempting to interfere with the mental processes of the jury.

Whether such a relationship requires reversal and a new trial does not depend on the juror's possible intentional as opposed to his inadvertent nondisclosure. Rather, as stated by the Court in *People v Graham,* 84 Mich App 663, 668; 270 NW2d 673 (1978),

"The party moving for a new trial must present proof of actual prejudice or must establish to the satisfaction of the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial. *Citizens Commercial & Savings Bank v Engberg,* 15 Mich App 438; 166 NW2d 661 (1968), *Gustafson v Morrison,* 57 Mich App 655; 226 NW2d 681 (1975)."

In *Graham,* the Court found that actual prejudice had been established because the juror had filed an affidavit admitting his acquaintance with a prosecution witness and resulting bias in favor of the prosecution. In *People v DeHaven,* 321 Mich 327; 32 NW2d 468 (1948), where the defendant had been charged with raping his 13-year-old stepdaughter, the failure of two jurors to reveal their blood relationship to one who had been convicted of a similar crime was held to require reversal. The Court intimated that the normal person would

be revolted by the thought of a father raping his child and that the aforesaid relationship of the two jurors "deprived them of the capacity to act impartially". *DeHaven, supra,* 334. In *People v Hannum,* 362 Mich 660, 666-667; 107 NW2d 894 (1961), a juror's nondisclosure of his position as township police officer and special deputy sheriff of the county was also held to require reversal. Citing the *DeHaven* case, the *Hannum* Court asked:

"Would any experienced trial lawyer, or, for that matter, the public generally, feel differently as to the capacity of a local police officer to set as a juror and consider impartially the case of a defendant charged with a crime committed in the community? We think not. That the lack of disclosure of the pertinent fact can be attributed to failure to expressly ask the prospective juror about it can hardly be thought to have insured an impartial trial any more so than in *DeHaven,* merely because there the panel members denied such disqualification". *Id.*

Certainly, if a juror's acquaintance with a witness or relationship to a defendant in a similar crime could deprive him of his ability to act impartially so could his status as a witness in a similar crime. However, since it is unclear whether the juror in question was aware at the time of trial that he would be called as a witness in the other case, we feel that the proper procedure is to remand this matter for an evidentiary hearing in the trial court. At that hearing, the trial judge should determine whether (1) the juror's status as a witness deprived him of his ability to act impartially in the case at bar; (2) defendant could have successfully challenged the juror for cause; or (3) defendant would have "otherwise" dismissed the juror by exercising a peremptory challenge had the truth been revealed. See *Graham, supra.*

Defendant argues that the prosecutor's injection of evidence of marijuana use by defendant and defense witnesses requires reversal. The prosecutor's argument that defense counsel actually introduced the issue of marijuana use is not borne out by the record. In fact, on cross-examination of Rufus Jackson, the first defense witness to testify, the prosecutor asked whether defendant ever smoked marijuana. Because the witness responded in the negative and because the court admonished the prosecution that the question was improper, the line of questioning was dropped as to Rufus Jackson. On cross-examination of Sherman Jackson, the prosecutor elicited that the witness, defendant, and Terry Traylor had together smoked two marijuana cigarets on the afternoon prior to the assault which occurred between 1 and 2 a.m. The witness also testified that he and defendant had each consumed approximately one quart of beer on the evening preceding the assault. Defense counsel objected, and following a discussion off the record, the court stated:

"Again, I tell the jury: the fact that they may have used marijuana has nothing to do with the guilt or innocence of the Defendant. You have a right to take it into consideration, just as you have a right to take into consideration whether somebody was drinking, only as it might affect their ability to observe or remember. Other than that, it's not to be used".

Following this testimony, defendant testified on direct examination that he "did smoke a joint" with Sherman Jackson and Terry Traylor that day and had consumed some beer, but that he was not drunk.

The prosecutor's questioning of defendant's alibi witnesses and defendant regarding marijuana and

alcohol consumption on the the evening of the assault was relevant to impeach their credibility by attacking their memory and perception of the criminal episode. MRE 607. The trial judge properly controlled the evidence by limiting the questioning to the afternoon and night preceding the crime, apparently concluding that its relevance outweighed its prejudicial effect, and in cautioning the jury to consider it only in weighing credibility. Moreover, due to the fact that assault and felony-firearm were charged, we do not believe that there was a reasonable likelihood that defendant was convicted because of his knowledge or association with drugs. Contrast *People v McKinney,* 410 Mich 413; 301 NW2d 824 (1981).

Defendant concedes that his final contention, that his convictions of both felony-firearm and assault for only one assault violate the Double Jeopardy Clause, has been resolved to the contrary. *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979).

Remanded for proceedings in accordance with this opinion. We retain jurisdiction.