654 N.W.2d 321 (2002)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Benny JOHNSON, Jr., Defendant-Appellant.
Docket No. 19418, COA No. 212482.
Supreme Court of Michigan.
December 27, 2002.
On order of the Court, the application for leave to appeal from the April 6, 2001 decision of the Court of Appeals is considered, and it is DENIED because we are not persuaded that the questions presented should be reviewed by this Court.
CORRIGAN, C.J. (concurring).
I concur in the order denying defendant's application for leave to appeal. I write separately to address the reasoning in the Court of Appeals lead opinion and of the dissenting judge.
After a jury trial, defendant was convicted on two counts of kidnapping, M.C.L. § 750.349, and one count of domestic violence, M.C.L. § 750.81(2). The Court of Appeals affirmed the convictions in a split decision, with one judge dissenting and one judge joining in the result only. The lead opinion held that the record failed to support defendant's claim that a juror concealed information about domestic violence allegations the juror had made against her husband and that defendant did not meet his burden of proving the juror's disqualification.

I
The complainant testified that she and defendant at one time had a dating relationship. After the relationship ended, defendant held the complainant and her three-year-old son captive. During this incident, defendant assaulted the complainant. Defendant was charged with firstdegree criminal sexual conduct, M.C.L. § 750.520b(1)(f), felonious assault, M.C.L. § 750.82, two counts of kidnapping, and domestic violence. The jury convicted defendant of the kidnapping and domestic violence offenses and acquitted him of the remaining charges. Before sentencing, defendant moved for a new trial, alleging that a juror did not disclose in voir dire *322 that she had filed a domestic violence complaint against her husband. The Court of Appeals lead opinion set forth the following additional facts:
During voir dire, the jurors learned that one of the charges against defendant was domestic violence involving an assault and battery. The trial court then asked the jury, "[N]ow that you have heard all of the charges in this case do you know of any reason why you should not serve as a juror in this case?" None of the jurors responded. When the trial court then asked, "Are there any among you who have been previously a victim of a crime?" Juror 457 responded, "I have been assaulted." The following colloquy then occurred:
"The Court: By virtue of that experience, would you be thinking about that experience and would it interfere with your ability to listen to the facts of this case and decide this case from the evidence here?
"Juror: No, I can keep it separate.
"The Court: Okay. You can keep it separate, good. Anyone else?"
When the prosecutor questioned the prospective jurors, she asked whether they would have any difficulty sitting on a jury where the defendant was charged with felonious assault and assault and battery domestic violence. None of the jurors responded.
When defense counsel questioned the jurors, he asked, "Has anyone in this jury box every [sic] been where you felt you were threatened with some type of weapon?" Juror 457 responded that she had been hit in the head with a gun as a teenager, but stated that she could put it aside. When defense counsel asked whether any of the prospective jurors had "something weighing so heavily on your mind right now that you might not be able to give full attention to this case" and "wouldn't want themselves sitting as a juror if they were the Defendant in a case," Juror 457 did not respond. The trial court also asked each of the newly seated jurors if there were any reasons why they should not serve as a juror in the case. Defense counsel, after requesting the court to remove one juror for cause and exercising six peremptory challenges, expressed satisfaction with the jury.
After trial, and before the sentencing hearing, defendant moved for a new trial on the basis of juror bias, contending that Juror 457 did not reveal during voir dire that, at the time of the trial, she was a complainant in a domestic violence case and that the same special unit of the office of the Oakland County Prosecuting Attorney was prosecuting that case.... The prosecutor, who was not involved in Juror 457's domestic violence case, further asserted that she had not cooperated with the prosecution in the case against her husband. In reply, defense counsel contended that he had learned that the juror had told the assistant prosecuting attorney assigned to her case that she was ready to convict defendant even before the trial began. [245 Mich.App. 243, 250-252, 631 N.W.2d 1 (2001).]
The trial court denied the motion for a new trial. The Court of Appeals, in an opinion by Judge O'CONNELL with Judge KELLY concurring in the result only, affirmed. Judge WHITBECK issued a dissent.

II
"The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." People v. Tyburski, 445 Mich. 606, 618, 518 N.W.2d 441 (1994). A court is "to allow the elicitation of enough information so that the *323 court itself can make an independent determination of a juror's ability to be impartial." Id. at 620, 518 N.W.2d 441. Litigants are entitled to truthful answers from prospective jurors on voir dire examination. Wood v. Henley, 296 Mich. 491, 497, 296 N.W. 657 (1941). Prospective jurors have the duty to reveal relevant information, regardless of its possible personal nature. People v. DeHaven, 321 Mich. 327, 334, 32 N.W.2d 468 (1948).
In short, for the reasons offered by Judge O'CONNELL, I would affirm the Court of Appeals judgment. The dissenting judge contends that Juror 457 was not wholly truthful. In certain circumstances, a juror's wilful failure to disclose relevant information may warrant a new trial. DeHaven, supra at 331-332, 32 N.W.2d 468. That rule does not apply in this case, however, because the record does not reveal that the juror intentionally concealed information from the trial court. Juror 457 truthfully answered the trial court's question whether she had been the victim of a crime by stating that she had been the victim of an assault. Juror 457's omission to state that she had been the victim of a domestic assault did not amount to concealment.
Moreover, follow-up questions to Juror 457 by defense counsel could have brought to light additional details about the assault. The dissent stated, "[t]here is no evidence that any additional questioning during voir dire would have revealed that Juror 457 could have been challenged for cause." 245 Mich.App. at 279, 631 N.W.2d 1 (WHITBECK, J., dissenting). The dissent further stated that "[g]iven a reasonably diligent inquiry that seeks to discover bias, I see no legitimate reason to make voir dire an exhaustive process that examines every event in a venire member's life from the moment of birth onward...." Id. at 286, 631 N.W.2d 1.
The law does not expect or encourage counsel to examine a juror's entire life history, but it does expect and encourage counsel to make reasonable further inquiry when put on notice of a juror's possible bias. Additional questioning about the facts of the assault could have revealed Juror 457's possible bias. The trial court did not place any limit on the scope of voir dire that would have prohibited further inquiry.
Where a juror's answer to a voir dire question signals that further inquiry may be necessary to flesh out the response, and the inquiry is not made, relief will not be granted.
Further, I agree with Judge O'CONNELL's analysis concerning the cases cited in the Court of Appeals dissenting opinion and by defendant. DeHaven is easily distinguished. In DeHaven, this Court stated the jurors in question must have known of their relationship to a man convicted of a crime substantially similar to that with which the defendant had been charged. In other words, the jurors deliberately withheld information and answered questions falsely. Further inquiry of them presumably would not have revealed the later-discovered information. DeHaven, supra at 334-335, 32 N.W.2d 468. Likewise, People v. Hannum, 362 Mich. 660, 107 N.W.2d 894 (1961), is distinguishable because the juror's conduct there amounted to knowing concealment. As discussed above, Juror 457's responses were not false and did not amount to concealment.
Finally, defendant's reliance on People v. Daoust, 228 Mich.App. 1, 577 N.W.2d 179 (1998), is misplaced. Daoust held that a defendant is entitled to relief when a juror who could have been challenged for cause was permitted to serve on the jury. Although the "information potentially affecting a juror's ability to act impartially," id. at 7, 577 N.W.2d 179, was discovered *324 after the jury was sworn in this case, it could easily have been discovered before that time. Juror 457's response that she had been the victim of an assault put defendant on notice that follow-up questions were required to flesh out the details. The failure to pose those questions bars relief. Contrary to the view of the dissenting judge in the Court of Appeals, I conclude that a reasonably diligent inquiry was not made.
MARILYN J. KELLY, J. (dissenting).
In a splintered decision, the Court of Appeals concluded that, at his trial, defendant received an impartial jury. It held that, at voir dire, (1) the responses to questions by one juror were not technically lies, (2) with more diligent inquiry, defense counsel could have uncovered the relevant circumstances of the juror's past, and, (3) the controlling cases of People v. DeHaven[1] and People v. Hannum[2] can be distinguished from this case. I believe that each prong of this analysis could be in error and the published decision involves a jurisprudentially significant issue. Therefore, I would grant leave to appeal to review it.
In DeHaven, a jury convicted the defendant of the rape of his thirteen-year-old stepdaughter. It evolved that two of the jurors had failed during voir dire to disclose that one of their relatives had pleaded guilty of raping his thirteen-year-old daughter. Because it found that this fact left the two jurors unable to remain objective, the Michigan Supreme Court reversed the conviction.
In rendering its decision, the Court did not focus on whether the jurors technically lied when answering questions during voir dire. Nor did it concern itself with whether they were questioned with sufficient diligence. Instead, inquiry was directed at whether the jury was impartial, notwithstanding the two jurors' nondisclosures. The Court held that the defendant did not receive a fair trial.
This Court employed a similar analysis in Hannum. There, a jury convicted the defendant of manslaughter in connection with the shooting death of her husband. The Court reversed her conviction because one of the jurors was a township police officer, a fact that the officer did not disclose on his juror questionnaire. The appellate court held that the juror lacked the capacity to judge impartially a defendant charged with committing a crime in the very community that the juror protected.
Importantly, the Court in Hannum did not question the veracity of the juror's answers on the questionnaire or inquire whether anyone should have questioned him further. It simply considered whether, with the police officer sitting on the jury, the defendant received the benefit of an impartial jury. The Court concluded that, even had the pertinent fact been disclosed through careful voir dire, the defendant would not have received a fair trial as long as the officer remained a juror. Hannum, supra at 667, 107 N.W.2d 894.
In this case, the Court of Appeals neglected to ground itself in this long-established method of analysis. Instead, it decided that, because the juror technically did not lie at voir dire, any fault in detecting her true circumstances lies with defense counsel for not questioning her further.
An inquiry grounded in DeHaven and Hannum would label the juror as biased. She recently had been a victim of the same type of crime that she was being asked to judge. The offense committed against her *325 was being prosecuted by the same division of the prosecutor's office that was prosecuting defendant's offense. Both cases were pending at the time of the voir dire.
A close examination of the voir dire transcript reveals that the juror was at least as untruthful as the jurors were in DeHaven. Moreover, no information was unearthed during the proceeding that would have put the court or the attorneys on notice that they should have inquired further into the juror's background.
Also, it is not clear that one could have uncovered the juror's bias by asking additional questions. In the pending domestic violence suit in which she was a complainant, she did not want her abuser convicted and had already recanted her testimony. She well may have feared that an admission that she was the victim of domestic abuse would be used against her abuser in his pending action. Additionally, she may not have wished to bring upon herself the self-perceived stigma of having suffered domestic abuse. Conceivably, she feared that her abuser would harm her if she exposed his abuse in open court. Although these conjectures may be unfounded, they illustrate my point: A conclusion that further questioning would have revealed the juror's circumstances is based on speculation. Such speculation derogates defendant's right to an impartial jury.
I note that the DeHaven Court implicitly rejected the premise on which the Court of Appeals majority based its decision. There, the appellate court relied on the trial judge's reasoning that the jurors did not have to reveal the pertinent facts. But, the Supreme Court discarded that line of reasoning. Instead, it determined that the jurors had an obligation to and did not reveal their potential bias and, on that basis, it reversed the ruling.
It is apparent here that the juror did not put the court or the attorneys on notice that she harbored bias, thereby giving counsel reason to inquire of her further. Moreover, I regard the Court of Appeals analysis on this issue as inappropriate and in conflict with DeHaven and Hannum.
This Court should grant leave to appeal to consider this jurisprudentially significant issue and the possible errors that I have highlighted.
MICHAEL F. CAVANAGH, J., joins in the statement of MARILYN J. KELLY, J.
NOTES
[1] 321 Mich. 327, 32 N.W.2d 468 (1948).
[2] 362 Mich. 660, 107 N.W.2d 894 (1961).