*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NAZIR J-S ABED,

        Defendant-Appellant.

UNPUBLISHED
March 3, 2022

No. 354393
Washtenaw Circuit Court
LC No. 19-000878-FH

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

STEPHENS, P.J. (*concurring*).

I write to concur with the conclusion reached in the majority opinion in this case but to depart from some of its analysis. Unlike the majority, I do find that counsel's failure to request the insertion of the word religion in jury instruction was error. However, because I do not feel that outcome of this case would have been different even with the instruction, I too, would affirm the conviction.

Jury impartiality is a core tenet of the American legal system. In *People v De Haven*, 321, Mich 327, 334, 32 NW2d 468 (1948), quoting, in *Durham v State*, 182 Tenn 577, 584, 188 SW2d 555 (1945), our Supreme Court recognized:

> The "impartial jury" guaranteed by constitutional provisions is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged . . . . [Quotation marks omitted.]

While social science tells us that adults begin to form opinions well before the close of evidence, argument and court instruction, our system repeatedly admonishes the jury to withhold judgment until all of the evidence has been received, arguments have been heard and instruction on the law given. See Simon, *On Juror Decision Making: An Empathic Inquiry*, 15 Ann Rev L & Soc Sci 415 (2019). Perhaps in acknowledgement of the fact that jurors do begin making judgments well before closing instructions, our system provides preliminary instructions

immediately after a jury is sworn. There is a trend to encourage that significant substantive instruction prior to the opening statements of the parties. Instructions on impartiality are frequently given in both preliminary instructions and final instructions. We instruct jurors to put aside biases even though most of the time jurors have affirmatively stated that they have none. "Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one who was quite positive that he had no bias, and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence." *Crawford v United States*, 212 US 183, 196; 29 S Ct 260; 53 L Ed 465 (1909). See also *Irvin v Dowd*, 366 US 717, 728; 81 S Ct 1639; 6 L Ed 2d 751 (1961) ("No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows is often its father. Where so many, so many times, admitted prejudice, such a statement of impartiality can be given little weight."). There is little guidance in our jurisprudence as to when special instruction should be given concerning bias. Instead, there is broad discretion bestowed on our trial judges to give such instruction if it is requested. *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994). In this instance, it was not requested and I concur with my colleagues that had it been requested it would not have been error for the trial judge to grant the request. However, I believe that counsel's failure to request such an instruction was error.

The majority concludes that religion was not a significant issue in this case and thus it was not error to fail to request an instruction in that regard. The majority noted the bases for this conclusion: no question was asked of the defendant about his religion, and that the only references to religion were made by the defendant and his brother. However, my review of the record provided several other direct and inferential references to religion. As noted in the majority, a juror specifically noted (in the presence of at least eight of the subsequently empaneled jurors) that he was unable to be impartial due to his perception of persons who are of the Muslim faith. That juror was excused and I only reference the excused juror to explain the context in which the inferential references to faith practice were likely to be received. The first inferential reference was visual, the complainant appeared in her hijab. It is common knowledge that certain observant Muslim women wear this head covering and also, dress in a manner that exposes very little skin other than the face. The prosecutor, also, referenced the hijab in the description of one incident when a photograph, ascribed to the defendant, was taken surreptitiously capturing the complainant. During the prosecution's opening statement, it noted that the complainant "wears a religious head scarf" as "part of her religion and culture," and stated it would "have to show a picture that could be humiliating" to the complainant. Later in examining the complainant the prosecutor queried her about the exhibit asking her if she had permission to present it to the jury. In the exchange concerning the exhibit, the complainant noted that she was "uncovered and not dressed". She noted that she did not "show skin". In addition to those references, the defendant explicitly testified that while he was legally divorced from the complainant but that no religious divorce had been granted. Finally, while acknowledging that not all persons whose first language is Arabic are Muslims, I note that a translator was present during the entire trial and there was extensive discussion with two prospective jurors about the language issues and the defendant being a recent immigrant during voir dire. The prosecutor even disclosed her immigration status and absence of language barriers during that discussion. There is a common correlation of Arabic as a first language and Islam as a faith practice. In sum, the combination of the excused juror's colloquy, the presence of and testimony concerning the hijab, testimony concerning Ramadan and the

distinction between a civil and religious divorce, should have led counsel to request an instruction concerning putting aside any consideration of religion.  This was not a circumstance where there was a single stray remark that counsel strategically decided to decline to request a special instruction to avoid emphasis.

The majority rightly notes that even if counsel had requested the instruction that the outcome would not have been affected.  The many instances where the defendant admitted actions in violation of the PPO, in combination with testimony from other witnesses, and photographic and testimonial evidence from the complainant, would likely have resulted in the very conviction challenged in this appeal.

Affirmed.

/s/ Cynthia Diane Stephens