Per Curiam.
 

 Defendant was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(l)(a) (sexual penetration of a person under the age of thirteen years), and one count of second-
 
 *24
 
 degree criminal sexual conduct, MCL 750.520c(l)(a) (sexual contact with a person under the age of thirteen years). He was sentenced to concurrent prison terms of eight to twenty years each for the first-degree esc convictions and eight to fifteen years for the second-degree esc conviction. He appeals as of right. We reverse and remand.
 

 i
 

 Defendant first argues that he was deprived of his right to a fair and impartial jury as a result of the trial court’s refusal to remove a juror who failed to initially disclose information relevant to her ability to objectively sit in judgment of this matter. We review de novo alleged errors in the seating of jurors. See
 
 People v Schmitz,
 
 231 Mich App 521, 528; 586 NW2d 766 (1998). After such review, we agree that defendant was denied his right to be tried by a fair and impartial jury, reverse his convictions, and remand this matter for a new trial.
 

 Defendant was on trial for criminal sexual conduct against his granddaughter. Allegations of such an offense are understandably met with disgust and emotion. To assure a fair trial, it was necessary for the trial court to use the voir dire to eliminate from the jury pool anyone who could not be fair and objective in hearing the evidence and determining guilt or acquittal. Accordingly, the trial court properly attempted to identify any potential jurors who might be unable to dispassionately review the case because of their own experiences with criminal or otherwise inappropriate sexual activity, either as a victim or an accused.
 

 
 *25
 
 To that end, the trial court asked prospective jurors whether they or their family members had been involved in “alleged criminal sexual assault or conduct of any sort.”
 
 [1]
 
 It also admonished them that “if there is anything that you think is responsive . . . that you bring it up,” explaining that “there are no wrong answers” and that the parties needed all information relating to the voir dire questions to assure the effective use of challenges. A potential juror whose daughter had been a criminal sexual conduct victim was excused, the court having invited a challenge for cause. Similarly, three other potential jurors who indicated they could not afford defendant a fair and impartial trial under the reasonable doubt standard were dismissed for cause. One of the replacement panelists, whose niece had apparently been the victim of criminal sexual conduct at the hands of her stepfather, expressed some concern about her ability to be fair and impartial, and, again, the court accepted a challenge for cause.
 

 Notwithstanding the trial court’s specific question to the potential jurors, its general admonition that anything that might be considered responsive to its questions should be brought forward, and all the activity regarding other potential jurors who were dismissed because of their backgrounds that touched on inappropriate sexual activity, one juror (juror H) did not raise any concern in this regard. A couple of hours after the jury had been sworn and trial had
 
 *26
 
 begun, a lunch recess was taken. During the recess, juror H was called into the courtroom, where she disclosed that she had previously engaged in “inappropriate behavior” with a cousin when both were preteens. She stated that she did not believe the conduct was criminal and thus had not mentioned it in response to the court’s specific question regarding “criminal sexual activity or conduct of any sort.”
 
 [2]
 

 Counsel for defendant asked that juror H be excused.
 
 [3]
 
 For some reason not apparent from the record, the trial court had not seated any alternate jurors and excusing, juror H would have resulted in a jury of less than twelve members. Defense counsel went so far as to offer to waive the twelfth-juror requirement unconditionally. Defense counsel stated that, “we understand that [juror H] has felt strongly enough about [the “inappropriate behavior” incident] to have made public statements about this conduct and [has] expressed strong emotion about it.” The prosecutor did not object to defense counsel’s proposal, but the trial court decided to continue the trial and consider the matter at a later recess.
 

 During the afternoon recess, one of defendant’s witnesses, a psychologist who worked with juror H, testified that juror H had mentioned to her on at least two occasions that she had been sexually abused. Although the trial court refused to allow the psycho
 
 *27
 
 logist to testify as a professional with respect to the level of emotion displayed by juror H during those conversations, the psychologist did state that juror H had “strong opinions” and “feelings” about those events. Relying on
 
 People v Daoust,
 
 228 Mich App 1; 577 NW2d 179 (1998), the trial court determined that defendant was not entitled to strike juror H from the jury and that there were no grounds to declare a mistrial.
 

 Before
 
 Daoust,
 
 precedents from our Court had reasoned that
 

 when information potentially affecting a juror’s ability to act impartially is discovered after the jury has been sworn, and the juror is allowed to remain on the jury, the defendant is entitled to relief on appeal if it can be established either (1) that the juror’s presence on the jury resulted in actual prejudice, (2) that the defendant could have successfully challenged the juror for cause, or (3) that the defendant would have “otherwise dismissed” the juror by exercising a peremptory challenge had the information been revealed before trial.
 
 [Id.
 
 at 7-8.]
 

 The
 
 Daoust
 
 panel, however, declined to follow these earlier cases to the extent that they allowed relief based on the “otherwise dismiss” (peremptory challenge) basis.
 
 Id.
 
 at 8. The Court reasoned, in part,
 
 [4]
 
 that that option “raises practical concerns” in that “it would be difficult for a court to reliably determine, in hindsight, whether a defendant possessing different information would have elected to exercise a peremp
 
 *28
 
 tory challenge.”
 
 Id.
 
 at 9. Because the defendant did not contend that he was actually prejudiced by the presence of the contested juror or that the juror should have been removed for cause, no relief was afforded.
 
 Id.
 

 We find
 
 Daoust
 
 to be distinguishable from the instant matter for a number of reasons. First, defendant here does argue that, had juror H made an earlier disclosure of the inappropriate sexual conduct involving her cousin, grounds for dismissal for cause would have been presented. The record here supports that argument. As noted earlier, the trial court invited challenges for cause from defendant with respect to other potential jurors who had any background involving sexual improprieties similar to that at issue here, without objection from the prosecutor. The record is clear that, had juror H come forward with the information that was later uncovered, she would have been dismissed for cause during the voir dire.
 
 [5]
 

 Second, in contrast to
 
 Daoust,
 
 there can be little doubt that, had defendant been informed at the voir dire about juror H’s involvement in the inappropriate sexual conduct with an older relative, a peremptory challenge would have been used had a challenge for cause been denied. The record is clear that all concerned—the trial court, defense counsel, and the prosecutor—were in agreement that panel members with this kind of background should not be included in the jury. At the end of the voir dire, defense coun
 
 *29
 
 sel had ten peremptory challenges remaining and there is nothing to suggest that one would not have been used, if necessary, to excuse juror H. Defense counsel had indicated the defense’s concern about background information of this nature by including a broad question drafted to elicit it, among the few that were presented to the trial court before the voir dire. Moreover, as soon as defense counsel learned of the problem with juror H, an objection was raised, and defense counsel even went so far as to argue that the issue was important enough that defendant would prefer to proceed ahead without the constitutionally authorized twelve jurors if the only option was to proceed with a full complement of twelve jurors that included juror H. Under these facts and circumstances, we do not share any of the
 
 Daoust
 
 panel’s concerns that “in hindsight” it is difficult to determine whether defendant would have used a peremptory challenge during the voir dire had juror H been forthcoming with the information later revealed.
 
 Id.
 
 at 9.
 

 Finally, the
 
 Daoust
 
 panel specifically noted that it did not address situations where a juror is less than forthcoming with information that should have been revealed in response to questions posed during the voir dire.
 
 Id.
 
 at 9, n 3.
 
 [6]
 
 The logic of the
 
 Daoust
 
 panel’s limitation on its ruling seems to be that the seating of a juror who withholds information that should have
 
 *30
 
 been produced as a result of questioning during the voir dire presents too great a risk that a defendant will not be provided an impartial jury. We agree with that rationale. By failing to be forthcoming with her account of the inappropriate sexual conduct she experienced with an older relative, juror H subverted the efforts of the trial court and defense counsel to assure that persons having that kind of background were not seated as factfinders. This resulted in at least an appearance of impropriety, that juror H had an “ax to grind” with respect to males, like defendant, who have arguably been sexually abusive to younger female family members.
 

 In sum, the facts and circumstances of this case provide compelling support for defendant’s argument that he should have been allowed to challenge the seating of juror H, even after the voir dire had been completed. Most notably, he did everything possible to assure that broad questions regarding inappropriate sexual conduct were asked of the jury and that the problem with juror H was brought to the attention of the trial court shortly after the voir dire was completed and only a few hours into the trial. We conclude that the trial court should have provided defendant with relief at that point, either by considering the propriety of proceeding forward with eleven jurors or by granting defendant a mistrial.
 
 [7]
 

 
 *31
 
 n
 

 Because we conclude that defendant’s convictions should be reversed and the case should be remanded for a retrial, we need not address defendant’s other assertions of error regarding the conduct of the trial. However, because the following issues may arise on retrial, we address them briefly.
 

 First, defendant argues that the trial court improperly refused to allow him to place testimony on the record indicating that he had the right to a polygraph examination and that although he appeared for a scheduled polygraph examination, the police refused to administer the examination. We review the trial court’s evidentiary decision for an abuse of discretion.
 
 People v Layher,
 
 238 Mich App 573, 582; 607 NW2d 91 (1999).
 

 Defendant was originally denied his right to a polygraph examination in violation of MCL 776.21(5). When defendant raised this issue before trial, the prosecution dismissed the case and subsequently refiled it.
 
 [8]
 
 Defendant again requested a polygraph examination after the charges were refiled. Defendant, however, sought to impose his own criteria for the examination, specifically demanding that the examination be tape-recorded. The polygraph exam
 
 *32
 
 iner refused. Defendant then declined to take the examination because it was not going to be tape-recorded. In the trial court’s well-reasoned opinion, it determined that defendant had refused to take his polygraph examination and that the police had not refused to give it. The court held that defendant’s statutory right was not violated and that he was not entitled to a tape-recorded polygraph examination. We agree. Moreover, if defendant was concerned about abuses at the examination, his counsel could have watched the examination from another room. Defendant was aware of this and nevertheless refused to take the examination.
 

 In any event, the information that defendant did not receive a tape-recorded polygraph examination was not relevant at trial. Evidence is relevant if it is material to a fact of consequence to the action. MRE 401;
 
 People v Brooks,
 
 453 Mich 511, 517-518; 557 NW2d 106 (1996). Here, the evidence was not relevant to any material fact but only to a collateral legal matter that was decided by the trial court. Accordingly, there was no error in the trial court’s decision.
 

 Defendant also argues that he was impermissibly restricted from admitting evidence to show that his own reactions were like those of persons falsely accused. Defendant sought to have his expert testify, on the basis of one scientific study, that falsely accused victims tend to exhibit certain reactions: specifically, that they do not take the accusations seriously and waive legal rights because they feel they are innocent. The trial court refused to allow the expert testimony. On appeal, defendant argues that the evidence would have assisted the jury in under
 
 *33
 
 standing defendant’s reactions, and thus, that the evidence was admissible.
 
 [9]
 
 We disagree.
 

 In
 
 People v Peterson,
 
 450 Mich 349, 373-375; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995), the Court held that expert testimony is admissible if it is relevant and helpful to explain a specific behavior that might otherwise be misconstrued by the jury. Here, the relevant testimony was that defendant was cooperative with the police, that he agreed to talk to them, and that he made some incriminating statements to them. This is not behavior that needed to be explained to the jury. It is common knowledge that defendants talk to police for myriad reasons, including that they believe they can convince the police of their innocence. There is no authority to support the conclusion that expert testimony was necessary to explain defendant’s behavior. Thus, the trial court did not abuse its discretion in refusing to admit the expert testimony on that issue.
 

 Finally, defendant complains because a witness was allowed to testify from summary reports he had prepared after speaking with the victim, rather than from his original notes. This matter was raised below only in a motion for a new trial. Thus, the trial court had no opportunity to consider whether, had the argument been raised before the testimony was
 
 *34
 
 presented, the testimony should have been disallowed. We decline to consider this issue for the first time on appeal.
 

 We reverse and remand for a new trial. We do not retain jurisdiction.
 

 [1]
 

 Before the voir dire commenced, defense counsel had proposed an even broader question, encompassing any “improper sexual contact.” At the voir dire, defense counsel brought that proposed question to the attention of the trial court, which had apparently previously overlooked it. Nonetheless, the broader question was not used.
 

 [2]
 

 She also stated that she could be fair and impartial. Nonetheless, whether she was sufficiently free from prejudice and otherwise competent to serve was a question for the trial court to decide.
 
 People v DeHaven,
 
 321 Mich 327, 332; 32 NW2d 468 (1948).
 

 [3]
 

 Contrary to the argument of counsel for defendant on appeal, there is no suggestion that trial counsel for defendant sought to ask any questions of juror H or suggested further questions to be posed by the court at any time.
 

 [4]
 

 The
 
 Daoust
 
 panel also noted that peremptory challenges are not constitutionally required.
 
 Id.
 
 at 8-9. While that is true, such challenges are important “to help secure the constitutional guarantee of trial by an impartial jury.”
 
 United States v Martinez-Salazar,
 
 528 US 304, 306; 120 S Ct 774; 145 L Ed 2d 792 (2000).
 

 [5]
 

 The prosecutor would likely have been unsuccessful in arguing against dismissal for cause. MCR 2.511(13) provides that any prospective juror who “is interested in a question like the issue to be tried” can be dismissed for cause. Being victimized by sexual misconduct carries a psychological effect that would certainly qualify as such an interest in the issue to be determined in a criminal sexual conduct trial.
 

 [6]
 

 The panel in
 
 Daoust
 
 spoke in terms of a juror who “lied” or “purposely provided any false answers” during the voir dire, and defendant argues here that juror H was guilty of a deliberate falsehood. We need not draw that conclusion regarding juror H in order to find that the reasoning in
 
 Daoust
 
 is inapplicable here. It is enough for us to conclude, as we do, that juror H failed to disclose information under circumstances where, considering the court’s colloquies with and the dismissal of other jurors and the trial court’s instructions, she should have come forward with the information at issue.
 

 [7]
 

 Reversal is required without any determination that defendant was actually prejudiced as a result of this failure to assure him an impartial jury.
 
 DeHaven, supra
 
 at 332. Nonetheless, we note that the evidence against defendant was far from overwhelming and that juror H was selected as foreperson for the jury.
 

 [8]
 

 We have reviewed defendant’s arguments regarding the propriety of the trial court’s approval of the prosecutor’s decision to nolle prosequi the original charges on these grounds, as well as the prosecutor’s subsequent refiling of the information with the inclusion of additional charges. Because we find the prosecutor’s actions to be neither unconstitutional, illegal, nor ultra vires,
 
 People v Morrow,
 
 214 Mich App 158, 161; 542 NW2d 324 (1995), and considering that the additional charges arose from information obtained by the police after nolle prosequi was entered, see
 
 People v Watts,
 
 149 Mich App 502, 509-511; 386 NW2d 565 (1986), we find these arguments to be without merit.
 

 [9]
 

 Defendant also complains that the trial court improperly utilized the
 
 Davis/Frye (People v Davis,
 
 343 Mich 348; 72 NW2d 269 [1955], and
 
 Frye v United States,
 
 54 App DC 46; 293 F 1013 [1923]) test. Defendant is correct. Where syndrome evidence is offered to explain certain behavior, the
 
 Davis/Frye
 
 test for recognizing admissible science is inapplicable.
 
 People v Peterson,
 
 450 Mich 349, 369; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). However, although the trial court applied the wrong test to deny admission of the proffered evidence, the result was nonetheless correct.