*562 KELLY, J.
(dissenting). At issue in this case is whether defendant is entitled to a new trial because a convicted felon served as a juror in his original trial. The majority concludes that the trial court correctly denied defendant’s motion for a new trial. The court ruled that defendant had failed to establish that he was actually prejudiced, pursuant to MCL 600.1354(1), by the presence of a convicted felon on his jury. The majority finds no clear error in this ruling. For the reasons set forth below, I believe that the Court of Appeals properly reversed the trial court and granted defendant a new trial. Its opinion should be affirmed.
I. FACTS AND PROCEDURAL HISTORY
The Ottawa County Prosecutor’s Office charged defendant with one count of first-degree criminal sexual conduct (CSC I). The charge was based on defendant’s alleged act of forcing his ex-girlfriend’s seven-year-old daughter to perform fellatio on him. Following a two-day jury trial, defendant was convicted as charged. Defense counsel then learned that one of the deliberating jurors, Jesse Lara, was a registered sexual offender. Defendant filed a motion for a new trial based on juror misconduct. Lara had answered “No” to a question on his juror questionnaire regarding whether he had ever been a defendant in a criminal case.
The trial court held an evidentiary hearing. Lara testified that he had been convicted of assault with intent to commit sexual conduct involving penetration seven years before and criminal sexual conduct 15 years before. As a result of these convictions, he was required to register with the Michigan Public Sexual Offender Registry. Lara also testified that one of his victims was his sister. He referred to the other as “an adopted child” who was “more like a niece.” Lara further stated that *563 he had completed and signed a juror questionnaire that contained the following question: “Have you ever been a victim, witness, plaintiff, or defendant in a criminal or civil suit?” The questionnaire also asked whether he had been convicted of a felony, misdemeanor, or traffic violation. He answered “No” to both questions.
Lara justified his “No” answers by stating that he had been untruthful “because that was a long time ago.” He claimed that he thought his convictions would remain on his record only “for maybe seven years.” Essentially, he claimed that he believed his convictions to be too old to matter. Lara acknowledged that he never asked for clarification from the trial judge or lawyers for either party about whether he was required to divulge his prior criminal convictions. Accordingly, he did not volunteer his convictions during voir dire.
Lara claimed that he tried to be fair during the trial. He asserted that he never tried to persuade the jury in any particular way because of his personal criminal history. He said that he never disclosed his prior convictions during deliberations or the fact that he had personal experience with how criminal cases are handled.
The judge concluded that Lara was truthful during the evidentiary hearing. The judge also determined that, had Lara answered the questions on the juror questionnaire truthfully, the prosecutor would have had him excused from the jury. The judge concluded:
I have fairly equal confidence that a defense attorney, knowing that the person . .. convicted of a crime is called to sit as a juror, especially a trial of someone who is accused of a similar type of crime, would not exercise a peremptory challenge.... Defendant does not indicate to this court that he would have exercised a peremptory challenge had he known.
*564 There is no evidence presented at this hearing or anything from any other source that Mr. Lara’s presence on the jury resulted in actual prejudice to the defendant.
Accordingly, the trial court denied defendant’s motion for a new trial.
The Court of Appeals reversed defendant’s conviction and remanded for a new trial. The Court relied on People v DeHaven.[1] It determined that, because the crimes committed by defendant and Lara were similar in that they involved criminal sexual conduct, defendant had not been afforded a fair and impartial jury. Thus, defendant had been prejudiced within the meaning of § 1354(1).
We granted leave to appeal[2] to determine (1) whether the Court of Appeals properly relied on DeHaven, (2) whether DeHaven has been superseded by §1354(1), (3) whether a criminal defendant must establish actual prejudice pursuant to § 1354(1) if the challenged juror was excusable for cause, (4) how the actual prejudice standard for purposes of § 1354(1) should be defined, and (5) whether Lara’s failure to disclose his status as a convicted felon, which disqualified him from serving as a juror, constitutes structural error pursuant to Neder v United States.[3]
II. ANALYSIS
A. LEGAL BACKGROUND
Juror qualifications are set forth in several statutes relevant to this case. MCL 600.1307a provides, in rel *565 evant part, that in order to qualify as a juror, a person shall not have been convicted of a felony.[4] Failure to comply with this provision renders a potential juror challengeable for cause.[5] Furthermore, “[i]f...the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from *566 the panel.”[6] This rule was also codified in MCL 600.1337, which states, “When the court finds that a ... juror is not qualified to serve... , or is exempt and claims an exemption, the court shall discharge him or her from further attendance and service as a juror.” Thus, the Legislature has made clear that those not meeting the relevant qualifications for jury service are not to be included on a jury. Finally, MCL 600.1354(1) provides, in pertinent part:
Failure to comply with the provisions of this chapter shall not... affect the validity of a jury verdict unless the party ... claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial.
Michigan courts have examined the legal effect of violations of these principles on numerous occasions. The facts of the leading case on the issue, People v DeHaven, are strikingly similar to those of the instant case. In DeHaven, the defendant was charged with the rape of his 13-year-old stepdaughter.[7] The case was submitted to a jury, which returned a guilty verdict.[8] The defendant moved for a new trial, arguing that two of the jurors had failed to disclose that a member of their family had been imprisoned for a similar offense.[9] The trial court denied the motion, ruling that the jurors had not been prejudiced and that nothing indicated that, if they had been prejudiced, it would likely have benefited the defendant.[10] The defendant appealed. This Court held that the relationship of the two jurors to a person who had committed a similar crime deprived *567 them of the capacity to act impartially.[11] Because criminal defendants are guaranteed the right to a trial by an impartial jury by both the United States[12] and Michigan constitutions,[13] the Court unanimously reversed defendant’s judgment of conviction.[14]
This Court revisited the issue of juror misconduct in People v Hannum.[15] The defendant in Hannum was granted a new trial when a member of the jury failed to disclose that he was a township police officer and special county sheriffs deputy. The Court, relying on DeHaven, held that the defendant had been denied a fair trial by an impartial jury because the lack of disclosure of the pertinent fact “can hardly be thought to have insured an impartial trial any more so than in DeHaven . . . .”[16] Furthermore, the Court noted, “[w]ould any experienced trial lawyer, or, for that matter, the public gener *568 ally, feel differently as to the capacity of a local police officer to sit as a juror and consider impartially the case of a defendant charged with a crime committed in the community? We think not.”[17]
The Court of Appeals addressed the same issue in People v Manser.[18] Manser involved a defendant charged with CSC I and CSC II.[19] The defendant was convicted of both charges.[20] On appeal, he argued that he was deprived of his constitutional right to a fair and impartial jury because the trial court had refused to remove a juror. The juror had failed initially to disclose information relevant to her ability to sit objectively in judgment of the case.[21] Specifically, the juror had failed to disclose that she had engaged in “inappropriate behavior” with a cousin when both were preteens.[22]
The Court of Appeals agreed that this failure to disclose warranted a new trial. It held that, had the juror disclosed during voir dire the inappropriate sexual conduct with her cousin, grounds for dismissal for cause would have been presented.[23] Moreover, the Court noted that, had the information been revealed during voir dire, a peremptory challenge would have been used if a challenge for cause had been denied.[24] Finally, the Court held that seating a juror who withheld information that should have been revealed presents too great a risk that the jury will not be impartial:
*569 By failing to be forthcoming with her account of the inappropriate sexual conduct she experienced with an older relative, [the juror] subverted the efforts of the trial court and defense counsel to assure that persons having that kind of background were not seated as factfinders. This resulted in at least an appearance of impropriety... .[25]
The Court concluded by stating that, under these circumstances, the trial court should have granted defendant some form of relief. It should have either considered the propriety of proceeding with 11 jurors or granted defendant a mistrial.[26]
In People v Daoust,[27] the Court of Appeals addressed whether the trial court deprived the defendant of a fair trial by refusing to remove a juror during trial. At a break in a witness’s testimony, one of the jurors indicated to a bailiff that he may have attended the same junior high school as the witness.[28] The defendant conceded that there were no circumstances justifying the juror’s discharge for cause. However, he argued that he would have exercised a peremptory challenge to remove the juror had he known of the juror’s link to the witness during voir dire.[29] The trial court denied the defendant’s request to remove the juror.[30] On appeal, the Court of Appeals held:
[W]hen information potentially affecting a juror’s ability to act impartially is discovered after the jury [has been] sworn, the defendant is entitled to relief... if he can establish (1) that he was actually prejudiced by the pres *570 ence of the juror in question or (2) that the juror was properly excusable for cause.[31]
The defendant in Daoust did not argue that he had been actually prejudiced or that the juror was removable for cause. Hence, the Court held that he was not entitled to relief.[32]
B. APPLICATION
The aforementioned cases demonstrate a longstanding adherence to a principle expounded in both the federal and state constitutions: criminal defendants are entitled to a fair and impartial jury. I believe that defendant was not afforded this right given the fact that Lara was allowed to participate as a juror. Under § 1307a, to qualify as a juror, a person must not have been convicted of a felony. Because Lara had been convicted of CSC, he was admittedly not qualified to be a juror. Defendant raised the issue of Lara’s disqualification as soon as Lara’s convictions became known.
Pursuant to § 1354(1), noncompliance with juror qualifications results in error requiring reversal only if the noncompliance actually prejudices the defendant and if the noncompliance is substantial. It remains undisputed that Lara’s disqualification is a substantial violation under § 1354(1). He failed to satisfy the criteria necessary to serve as a juror set forth in MCR 2.511(D) and § 1307a. The question then becomes whether defendant was actually prejudiced within the meaning of § 1354(1).
DeHaven and its progeny are reasonably similar to this case. In DeHaven, the defendant was convicted of *571 rape for engaging in sexual conduct with his stepdaughter. During voir dire, the court asked prospective jurors whether any had experience with a criminal case and whether any of their relatives had been involved in a similar case involving rape. All answered in the negative, including a juror who had a family member who had been convicted of raping a minor. A second juror, who was also related to the family member, also denied any such prior experience. In reversing the conviction and remanding for a new trial, this Court stated:
In the case at bar the jurors stated on voir dire examination that they could fairly and impartially sit as jurors in the case; and that there was no other case that they had heard about which would influence their verdict.... We are of the opinion that the relationship of these two jurors to one who had committed a similar crime was such that it deprived them of the capacity to act impartially. Defendant has the right to a trial by an impartial jury. We cannot say that he had such a trial.[33]
Here, the crimes of which defendant is accused and that Lara committed relate to CSC. Moreover, Lara himself committed the crimes, not merely a relative, as in DeHaven. The Court of Appeals in this case recognized the similarity, holding:
Here, the crimes committed by... defendant and the challenged juror were also similar in nature [like those in DeHaven], relating to criminal sexual conduct. Moreover, the challenged juror himself had committed the crimes, not just a relative as in DeHaven. Further, while the challenged juror proclaimed that he was fair, impartial, and listened to the evidence, arguments, and instructions, the jurors in DeHaven also claimed an ability to be fair and impartial, *572 yet the Supreme Court reversed. Accordingly, defendant was not afforded a fair and impartial jury and was thus prejudiced.[34]
Thus, the Court of Appeals explicitly determined that defendant had been prejudiced. Given the obvious factual similarities between the two cases, I believe the Court of Appeals properly relied on DeHaven. Likewise, although the challenged jurors in DeHaven indicated that they had been fair, impartial, and had listened to the evidence, so too did Lara. However, as the DeHaven Court found this effort to be insufficiently protective of the defendant’s right to a fair and impartial jury, the Court of Appeals properly granted defendant a new trial.[35]
The majority struggles at length to distinguish DeHaven and Daoust. It claims that DeHaven used a de novo standard of review of the trial court’s finding that the two jurors were biased, rather than the clear error standard used today.[36] According to the majority, the DeHaven Court also used a de novo standard of review *573 when deciding defendant was entitled to a new trial.[37] At the outset, the standard of review in DeHaven is irrelevant to the issue presently before the Court of whether defendant was denied a fair and impartial trial in this case.[38] More importantly, however, wholly absent from DeHaven is any language indicating which standard of review was used. Therefore, the majority’s attempt to distinguish DeHaven on this basis is unavailing.[39]
*574 With respect to Daoust, the majority makes no attempt to distinguish the relevant facts. Yet it concludes that, to the extent that Daoust holds that a new trial is required whenever a juror would have been excusable for cause, it is overruled.[40] However, there is no need for the majority to overrule Daoust. It could be read harmoniously with § 1354(1) in that, if a juror is excusable for cause and is left impaneled, actual prejudice results.
Furthermore, I believe Manser provides guidance and demonstrates the soundness of the Court of Appeals decision in this case. A juror in Manser indicated after trial had begun that she had engaged in conduct similar in nature to that alleged against the defendant. Despite the defendant’s attempt to remove the juror, the court continued the trial with the juror impaneled. In reversing the defendant’s conviction, the Court noted that the juror was removable for cause and thus defendant was entitled to a new trial. Although the Court did not use the word “prejudice,” its holding essentially stated that the defendant was prejudiced by a juror whose presence created the appearance of a potential bias. Here, Lara would have been removable for cause pursuant to MCR 2.511(D) had he disclosed his previous convictions. Moreover, it is without question that Lara’s presence created, at a minimum, an appearance of potential bias.[41] Therefore, the Court of Appeals properly granted defendant’s motion for a new trial.
*575 Finally, the majority attempts to distinguish Froede v Holland Ladder & Mfg Co.[42] Froede involved a juror who misrepresented her criminal history on the juror questionnaire. The juror had hired an assassin to kill a drug informant who had agreed to testify against the juror’s ex-husband. In applying § 1354(1), the Court of Appeals granted a new trial because it held that the juror’s criminal conviction and misrepresentation of her criminal background constituted actual prejudice.
The Court pointed out several noteworthy considerations that bear on this case. First, Froede was a civil case. Although MCR 6.412(D)(2) requires that a trial court in a criminal case excuse a juror challenged for cause under MCR 2.511(D), there is no similar requirement in civil matters. As the Court noted, “we find that the existence of potential biases or prejudices of a juror with a prior felony conviction is substantially lessened in a civil case as opposed to a criminal case.”[43] Thus, explicit in the Court’s holding is its recognition that, in criminal cases, the potential for a convicted felon’s bias to reveal itself is higher than in civil cases. Second, the Court noted that the conviction could “reflect on the juror’s honesty, and, given the nature of the conviction, th[e] juror may well have infected the jury’s deliberations.”[44]
*576 Based as it was on the principles expounded in DeHaven, Hannum, Manser, Daoust, Crear, and Froede, the Court of Appeals decision to grant defendant a new trial was well reasoned. Moreover, the Court explicitly held that defendant was prejudiced and thus satisfied the statutory requirement set forth in § 1354(1).
III. RESPONSE TO THE MAJORITY
The majority opinion is deficient in several respects. First, it fails to address how the “actual prejudice” standard for purposes of § 1354(1) should be defined.[45] *577 As stated earlier, § 1354(1) requires a finding of actual prejudice resulting from an error in order for reversal to be required. However, nowhere in that section is there a definition of “actual prejudice.”
DeHaven and its progeny, including Daoust and Crear, suggest that a defendant need only establish (1) that he was either actually prejudiced by the disqualified juror’s participation or (2) that the juror was excusable for cause. This line of cases seems to suggest that actual prejudice occurs automatically upon a juror’s improper participation in a case. While § 1354(1) and caselaw may seem to offer different interpretations of what a defendant must establish to obtain a new trial, it is unquestionable that one must show actual prejudice. However, because the statute does not offer its own definition of “actual prejudice,” a starting point for analysis is the dictionary definition of the words. “Actual” means “(1) existing in act, fact, or reality; real” and “(2) existing now; present; current.”[46] “Prejudice” means:
(1) an unfavorable opinion or feeling formed beforehand or without knowledge, thought, or reason. (2) any preconceived opinion or feeling, either favorable or unfavorable. (3) unreasonable feelings, opinions, or attitudes, [especially] of a hostile nature, regarding a racial, religious, or national group. (4) such attitudes considered collectively.... (5) damage or injury; detriment .... (6) to affect with a prejudice.[47]
On the basis of these definitions, a defendant should have to demonstrate an existing unfavorable opinion or the presence of a preconceived opinion or feeling, *578 whether favorable or unfavorable.[48]
Applying this requirement to this case, the Court of Appeals should be affirmed. Lara must have had preconceived notions about defendant, whether favorable or unfavorable, merely because he had committed crimes similar to those charged here.[49] This reasoning is also in line with DeHaven, Hannum, Manser, Crear, and Daoust.
This result also makes practical sense, which highlights the second flaw in the majority opinion. Trial courts must exclude unqualified jurors if facts are present indicating that a juror is unfit for service.[50] It logically follows, then, that a defendant should not be burdened with proving prejudice beyond what a court must find to exclude an unqualified juror. To do so would allow jurors to conceal relevant information and then sit on juries anyway. In effect, this would create an insurmountable standard for a defendant to overcome.
Promoting juror honesty is a laudable goal and one that is essential to the selection of a fair and impartial *579 jury in criminal cases. It is likewise essential to the fair administration of justice. If the standard for obtaining a new trial based on juror dishonesty is so high that it can rarely be established, then there is no remedy for defendants convicted by dishonest jurors.[51] It is for this reason that the majority opinion becomes unworkable and manifestly unjust.
Furthermore, there is no indication that the Legislature intended such a heightened standard. Section 1354(1) merely indicates that “actual prejudice” must be shown. If jurors such as Lara sit on juries despite their lack of qualifications, evidentiary hearings will be necessary to determine whether the disqualified juror infected the entire jury. This would require the presence of all deliberating jurors. Arguably, such a hearing would border on impeachment of a verdict through cross-examination of the jurors regarding their deliberations, a practice that is discouraged.[52] The holding of such evidentiary hearings would become extremely burdensome on the court system. Yet it remains unclear in what other way a defendant could meet an actual *580 prejudice burden under the majority’s standard. Essentially, overturning a verdict because of juror misconduct becomes impossible.
Finally, the majority engages in a purely speculative exercise in its attempt at labeling Lara and other unqualified jurors who have been convicted of felonies as favorable to criminal defendants. Without question, criminal defendants are entitled to a fair trial, which includes the impaneling of an impartial jury. The seating of a biased juror, irrespective of which way his or her bias is expected to cut, is an error in the eyes of the law. This is evidenced by statutes and court rules that seek to weed out such errors.[53] Indeed, assuming — or guessing, as the majority does — who benefits from the bias is folly. At some point, a juror’s past experience must lead to a presumption of bias because of the juror’s inherent knowledge from experience. In this case, this presumption exists because Lara’s past experiences are so similar to the current defendant’s alleged crimes.
The majority wrongly speculates that convicted felons on juries will help defendants. Moreover, it should not engage in any exercise that could harm the administration of justice. Essentially, the majority opines that a convicted felon’s bias is acceptable because it is assumed that most felons will be sympathetic toward defendants. Is it now the law that all felons are assumed to be sympathetic to defendants and thus they can never be challenged by defendants for bias? Moreover, are felons’ biases always assumed against prosecutors, such that if the parties’ positions in this case were reversed, the prosecutor would have a strong claim of *581 bias? Are felons so homogenous that such a broad generalization is worthy of judicial codification? I think not.
IV CONCLUSION
The Court of Appeals properly held that defendant was entitled to a new trial. In doing so, the Court properly relied on DeHaven and its progeny for the proposition that a convicted felon serving on a jury constitutes prejudice within the meaning of § 1354(1). Accordingly, I would affirm the Court of Appeals and remand this case to the trial court for a new trial.
CAVANAGH, J. I concur with Justice KELLY’s result.

 People v DeHaven, 321 Mich 327; 32 NW2d 468 (1948).

 People v Miller, 481 Mich 851, 851-852 (2008).

 Neder v United States, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

 MCL 600.1307a(l)(e).

 MCR 2.511(D) provides:
It is grounds for a challenge for cause that the person:
(1) is not qualified to be a juror;
(2) is biased for or against a party or attorney;
(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;
(4) has opinions or conscientious scruples that would improperly influence the person’s verdict;
(5) has been subpoenaed as a witness in the action;
(6) has already sat on a trial of the same issue;
(7) has served as a grand or petit juror in a criminal case based on the same transaction;
(8) is related within the ninth degree (civil law) of consanguinity or affinity to one of the parties or attorneys;
(9) is the guardian, conservator, ward, landlord, tenant, employer, employee, partner, or client of a party or attorney;
(10) is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution;
(11) has a financial interest other than that of a taxpayer in the outcome of the action;
(12) is interested in a question like the issue to be tried.

 MCR 6.412(D)(2).

 DeHaven, supra at 329.

 Id.

 Id.

 Id. at 331.

 Id. at 334.

 US Const, Am VI.

 Const 1963, art 1, § 20.

 DeHaven, supra at 335. The Court also noted:
Examination into the competency of a juror, when he is challenged, is essentially a taking of such prospective juror’s testimony to determine whether he has the statutory qualifications of a juror and is free from prejudice or interest, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. ... He is not, however, the judge of his own competency, impartiality, and freedom from prejudice, in the sense that his testimony is to be accepted as final and conclusive of the issue, and no statute can clothe him with such judicial discretion and power. His competency is left to the determination of the court or of triors, who are not bound by his testimony but may rely on other evidence. [Id. at 332 (citation and quotation marks omitted).]

 People v Hannum, 362 Mich 660; 107 NW2d 894 (1961).

 Id. at 667. While I recognize that the juror in Hannum was not statutorily disqualified, as is Lara, it is noteworthy that the Court held that the defendant had been denied a fair trial.

 Id. at 666.

 People v Manser, 250 Mich App 21; 645 NW2d 65 (2002).

 Id. at 23-24.

 Id. at 24.

 Id.

 Id. at 26.

 Id. at 28.

 Id.

 Id. at 30.

 Id.

 People v Daoust, 228 Mich App 1; 577 NW2d 179 (1998).

 Id. at 6.

 Id.

 Id.

 Id. at 9. The Court of Appeals reiterated this holding in People v Crear, 242 Mich App 158, 167; 618 NW2d 91 (2000).

 Daoust, supra at 9.

 DeHaven, supra at 334.

 People v Miller, unpublished opinion per curiam of the Court of Appeals, issued January 17, 2008 (Docket No. 273488), at 3 (emphasis added).

 The majority claims that because DeHaven was decided before the enactment of MCL 600.1354(1), it should not be considered controlling. This argument is unpersuasive for several reasons. First, in Crear, supra at 167, the Court of Appeals, relying on Daoust (which relied on DeHaven) held that a defendant must establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause. Crear was decided in light of § 1354(1) in 2000 and implicitly acknowledged the import of § 1354(1) by recognizing that actual prejudice must be shown to warrant a new trial. Second, Crear can be read harmoniously with § 1354(1) by incorporating the failure to remove a juror excusable for cause into the parameters of actual prejudice within the meaning of the statute. This is entirely possible, especially given the lack of a definition for “actual prejudice” in § 1354(1).

 Ante at 557.

 Ante at 558.

 The majority mistakenly mingles the standard of review in this case with the standard of review used in DeHaven. I agree that the proper standard in this case is review of the trial court’s factual findings for clear error. The decision on the motion for a new trial is reviewed for an abuse of discretion. My agreement ends there.
It is not relevant what standard the DeHaven Court applied. DeHaven is devoid of any indication of the deference (or lack thereof) paid to the trial court’s decision in that case. Thus, it is mere conjecture for the majority to state that the DeHaven Court improperly engaged in a review de novo. Ante at 557-558.

 The majority opinion seems to overrule DeHaven because it applied the wrong standard of review. Yet, the majority avoids outright abrogation of DeHaven by simply stating that DeHaven’s holding is neither binding nor persuasive precedent.
Furthermore, the majority discards DeHaven’s reasoning because the case was decided before the enactment of § 1354(1). Yet, the majority relies on Froede v Holland Ladder & Mfg Co, 207 Mich App 127; 523 NW2d 849 (1994), and People v Carey, 110 Mich App 187; 312 NW2d 205 (1981), as support for its framing of “actual prejudice.” This reliance makes little sense given that these cases also predate § 1354(1). See also People v Graham, 84 Mich App 663; 270 NW2d 673 (1978), which held that the party moving for a new trial must present proof of actual prejudice. If not, it must satisfy the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror had the truth been revealed before trial.
I conclude that DeHaven is precedential with respect to Lara’s lack of qualification to serve as a juror and defendant’s entitlement to a new trial. DeHaven should either be read as controlling or should be overruled. If DeHaven is not applicable here, then it is not applicable anywhere and should not be left hanging in the wind.

 Ante at 561.

 The majority conflates “actual prejudice” with “actual bias.” Ante at 554 n 16. Section 1354(1) requires a showing of actual prejudice. This is not the same as actual bias. Indeed, as recognized explicitly by Holt v People, 13 Mich 224 (1865), and implicitly by DeHaven, Hannurn, Manser, Daoust, Crear, and Froede, the appearance of partiality or bias creates a reasonable doubt sufficient to satisfy § 1354(1).

 Froede, supra.

 Id. at 133.

 Id. at 134. In Froede, the trial court found that the juror had deliberately misrepresented her criminal history. In this case, the trial court found that Lara was not “attempting to be deceitful or that he had any ulterior motive in answering the[] [jury] question[naire].” The majority distinguishes Froede on this basis. While the trial court found that Lara’s responses lacked deceit, Lara had no incentive to state that he had been dishonest or deliberately misrepresented his criminal history. Thus, absent an admission by Lara, the trial court had no basis on which to determine whether Lara had been deceitful in answering the questionnaire.

 The closest the majority comes to defining actual prejudice is its assertion that juror misconduct is only prejudicial if it denies a defendant an impartial jury. Ante at 548. Essentially, this is an outcome-determinative standard in disguise. The majority further opines that “[t]he burden is on the defendant to establish that the juror was not impartial. . . .” Ante at 550, citing Holt v People, 13 Mich 224, 228 (1865). However, Holt requires a defendant to show only that a juror’s impartiality is in reasonable doubt. Id. at 227. Thus, contrary to the majority’s analysis, Holt does not either explicitly or implicitly require a defendant to prove actual bias by the disqualified juror. Yet actual bias is what the majority requires in this case. Indeed, although the majority correctly cites Holt, it fails to recognize that the reasonable doubt standard in Holt requires less than actual bias to establish actual prejudice. Compare ante at 550 with ante at 554 n 16. The majority, under the guise of statutory interpretation, is effectively legislating from the bench by crafting the words “actual bias” into § 1354(1), when no such language exists.
Furthermore, the majority’s analysis fails to provide guidance to lower courts. Specifically, it leaves unresolved how a defendant is to prove actual prejudice (or partiality as the majority would have it) absent an admission by a juror that he possessed bias in rendering a verdict. The majority also selectively cites Note, When jurors lie: Differing standards for new trials, 22 Am J Crim L 733, 737 (1995), for the proposition that some states require a showing of juror bias before they will grant a defendant a new trial. Ante at 549 n 9. However, this article reveals that the states employ different standards including (1) a showing of possible bias, (2) a showing that the juror would have been struck for cause had the undisclosed information been revealed on voir dire, and (3) a showing of no bias at all. See TK Stanley, Inc v Cason, 614 So 2d 942, 949 (Miss, 1992); Gainesville Radiology Group v Hummel, 263 Ga 91, 93; 428 SE2d *577 786 (1993); Wright v Bernstein, 23 NJ 284, 294-295; 129 A2d 19 (1957).

 Random House Webster’s College Dictionary (2001).

 Id. (emphasis added).

 Contrary to the majority’s belief, this standard does not contradict Holt. Holt requires that a defendant show only that a juror’s impartiality is in reasonable doubt. This proof is merely a means to demonstrate actual prejudice as required by § 1354(1). In any event, it is noteworthy that the majority exhibits its usual unquestioning confidence in its ability to decide which dictionary definition of a word the Legislature intended. See, e.g., Liberty Hill Housing Corp v City of Livonia, 480 Mich 44, 57-58; 746 NW2d 282 (2008). Plucking one definition from a basket of many is nothing less than speculation in the guise of omniscience.

 I refute the majority’s contention that it is “pure speculation” to believe that an ex-felon would have some sort of “prejudice,” as defined above, about a defendant. Ante at 553 n 15. One convicted of the same crime charged against a defendant would, at a minimum, be thoroughly familiar with the nature of the crime(s) charged. The convict would know how such crimes are committed, the emotions and feelings associated with the guilt accompanying the criminal act(s), and criminal procedure in general.

 MCR 6.412(D).

 Section 1354(1) requires a showing of actual prejudice. However, the majority opinion interprets actual prejudice so narrowly that prejudice will be impossible to prove, absent a juror admitting actual bias. Ante at 552-554. This standard is too strict. Often, jurors will not admit bias, especially after rendering a verdict, because they have a stake in defending their decision. Furthermore, the majority opinion implies that anytime a former juror states that he or she was unbiased, a defendant cannot demonstrate prejudice. Presumed bias must be accepted in some instances, and this is one such instance. In fact, the majority opinion’s exceedingly narrow standard effectively renders the jury qualification standards meaningless. Any verdict that was rendered with an unqualified juror is unassailable because simply showing a lack of qualification(s) is not enough to show prejudice. I believe that the juror qualifications set forth in MCR 2.511(D) should be given more force.

 Consumers Power Co v Allegan State Bank, 388 Mich 568; 202 NW2d 295 (1972).

 The majority ignores the purpose of MCR 2.511(D) and MCL 600.1337. These rules were set forth in an attempt to eliminate potential bias from juries.