*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK ANTHONY VARNER,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2019

No. 333535
Macomb Circuit Court
LC No. 2014-003080-FC

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of assault with intent to commit murder, MCL 750.83, two counts of possession of a firearm during the commission of a felony, MCL 750.227b, and one count of discharging a firearm from a vehicle, MCL 750.234a. The trial court sentenced defendant to serve terms of imprisonment of 4 to 30 years for each assault conviction, two years for each felony-firearm conviction, and 10 to 23 months for the discharge of a firearm conviction. The felony-firearm sentences are concurrent with each other, but consecutive, respectively, to the assault sentences, and all other sentences run concurrently. Defendant also appeals the trial court's post-trial order denying his motion for a new trial. We affirm.

At trial, the principal complaining witness testified that shortly after midnight on July 15, 2014, he and his live-in girlfriend were driving from a fast-food restaurant in his truck when they came upon a black Fiat that was moving very slowly, then suddenly stopped, at which point the complainant drove around it, turning on side streets. Shortly thereafter, the complainant again encountered the slow-moving Fiat, which again abruptly stopped, and this time when the complainant drove around the Fiat, defendant, the driver of the Fiat, fired several gunshots at the complainant's truck. The complainant's passenger substantially confirmed that account. Defendant, however, testified that the truck was following him menacingly and that he braked suddenly in response to unexpected heavy rain, after which shots rang out from the truck, and in response, defendant returned fire in hopes of scaring the assailant off.

On appeal, defendant challenges the trial court's decision not to allow the defense to present the details attendant to the principal complainant's 1998 convictions of assault with intent to commit murder and felony-firearm and also the court's denial of his motion for a new trial predicated on alleged juror bias and newly discovered evidence.

We review a trial court's evidentiary decisions for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). A court's decisions on a motion for a new trial and a motion for reconsideration are also reviewed for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008); *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008). "A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2008). A trial court's factual findings are reviewed for clear error. MCR 2.613(C). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake was made. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

## I. THE COMPLAINANT'S EARLIER CONVICTIONS

Before trial, the defense gave notice of its intent to present evidence that the complainant was involved in an earlier incident involving his discharge of a firearm from a moving vehicle, offering that evidence under MRE 404(b)(1). The prosecutor described the prior conduct as follows:

> [The complainant] was called by a friend who had been kicked out of a house party. His friend wanted to go back and either get in a fight or basically take revenge on the people who kicked him out. So a large group of people, including [the complainant], who was picked up, did not drive in his own car, was picked up by this group of people they went . . . around the house a couple times . . . . At some point, then, [the complainant] did shoot from the car at that house[;] they . . . drove away. At some point, [the complainant] put the gun into the trunk instead of having it in the car and, at some point later that evening, he was dropped off with the gun. . . . [T]he gun ended up at his girlfriend's house . . . .

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identify, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) "represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). The list of permissible purposes in MRE 404(b) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Indeed, a proper purpose simply is one *other*

than establishing a defendant's character to show his propensity to commit the charged offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Although MRE 404(b)(1) is generally applied in connection with criminal defendants, it also "applies to the admissibility of evidence of other acts of any person, such as a defendant, a plaintiff, or a witness." *People v Rockwell*, 188 Mich App 405, 409-410; 470 NW2d 673 (1991).

Thus, in order for other-acts evidence to be introduced, the following test must be satisfied: (1) there must be a reason for its admission other than to show character or propensity and (2) the evidence must be relevant. *Sabin*, 463 Mich at 55. Furthermore, the evidence must also meet the requirements of MRE 403, which prohibits the introduction of evidence where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 55-56; *People v Starr*, 457 Mich 490, 498; 577 NW2d 673 (1998).

The salient portion of MRE 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence becomes unfairly prejudicial and should be excluded when "use of the evidence would be inequitable or if there is a danger that the jury will give it undue or preemptive weight." *People v Lane*, 308 Mich App 38, 55; 862 NW2d 446 (2014). We give deference to the trial court's MRE 403 analysis because of its "contemporaneous assessment of the presentation, credibility, and effect of testimony." *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Thus, "[i]n reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " *People v Head*, 323 Mich App 526, 540; 917 NW2d 752 (2018) (citation omitted). " '[T]he draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that the trial judge should not be reversed simply because an appellate court believes it would have decided the matter otherwise.' " *Id.* at 540-541 (citation omitted).

The trial court initially announced its intention "to admit evidence regarding the complainant's prior conduct," but after entertaining further argument at a subsequent pretrial hearing, the court stated its intention to "take a closer look at these issues," after which the court issued an order denying defense counsel's motion to allow the evidence. The court explained as follows:

> [T]he similarities between the case at hand and the complainant's prior conviction is [sic] extremely limited. The . . . two crimes have common features, but are more indicative of similar spontaneous acts as opposed to a common design or plan. Accordingly, upon further review, the Court is satisfied that the probative value of the other acts evidence is slim. On the other hand, the prejudicial nature of evidence that the complainant was convicted of a similar act would be significant, especially in light of the nature of the charges and the credibility determination involved. The Court is therefore satisfied that the prejudicial effect of the other acts evidence substantially outweighs the probative value of the evidence.

On appeal, defendant maintains that the evidence was admissible to show a common plan or scheme, a permissible use for other-acts evidence. See MRE 404(b)(1); *Johnigan*, 265 Mich App at 465.

Defendant claims that the trial court erred in regarding the incidents in question as reflecting "spontaneous" behavior, in light of the indications that considerable machinations preceded the complainant's resort to shooting in 1998, and also that defendant's theory of the instant case included a considerable period of confrontation and maneuvering before any shooting took place. However, even if "spontaneous" was not the best way to describe either the complainant's actual shooting in 1998, or his shooting in the instant case as defendant alleges, the trial court in fact reasonably concluded that the two shooting incidents arose not in furtherance of any common plan or scheme, but rather as prompted by different concerns of the moment.

Although defense counsel ably presented the facts of the earlier incident as if establishing a plan or scheme on the complainant's part of shooting at strangers from a vehicle, the prosecutor's offering of additional facts did indeed bring to light that the two incidents only had limited commonality. What defendant described of the complainant's actions was a confrontation involving defendant and his vehicle, leading the complainant to start shooting in an apparent fit of so-called road rage while accompanied only by his girlfriend. The complainant's earlier conviction, however, stemmed from a shooting prompted by a friend seeking revenge against a houseful of revelers, which was further encouraged by that friend's supporters in the moment. Although defendant's characterization of the earlier incident portrayed both incidents as involving the complainant shooting at strangers from a moving vehicle, the two incidents differed in that the earlier incident did not otherwise resemble road rage and the alleged later incident had nothing to do with empathizing with, or demonstrating support for, a friend who thought he was treated badly by persons gathered in the targeted location. Therefore, the trial court did not abuse its discretion in concluding that, because the two episodes were not substantially similar, the prior incident lacked any true relevance to show a *common* plan or motive under MRE 404(b).

Defendant additionally relies on *United States v Aboumoussallem*, 726 F2d 906 (CA 3, 1984), and suggests that the trial court erroneously considered the potential for unfair prejudice in the usual sense of a criminal defendant's interests, failing to bear in mind that prejudice presents a lesser concern when the prior bad acts are attributed to an uncharged witness. See *id.* at 911 (holding that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword" because "risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense"). However, we are not bound to follow *Aboumoussallem*. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts."). Moreover, *Aboumoussallem* does not stand for the proposition that unfair prejudice is never a concern when a criminal defendant seeks to introduce prior-acts evidence of a third party. Rather, the *Aboumoussallem* court simply stated that when other-acts evidence is being introduced by a defendant, its admissibility is not as restrictive as when a prosecutor seeks to use such evidence. *Id.* at 911. But the trial court still needs to engage in a MRE 403 analysis. See *id.* at 911-912.

Here, the trial court found that because of the dissimilarities between the 1998 shooting incident and the alleged shooting in this case, there was "slim" probative value to the prior-acts evidence. And on the other hand, the court found that there was the danger of significant prejudice due to the fact that the complainant was convicted of a somewhat similar act. We presume that the trial court understood that the risk of unfair prejudice existed not in relation to the complainant personally, whose penal interests were not then at stake, but rather in relation to the prosecution's right to present its case without seriously distorting influences. See *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999) (stating that there is a presumption that a trial court knows the law). Given the highly deferential standard of review already noted, we cannot conclude that the court reached an unprincipled result.

Therefore, for these reasons, we hold that the trial court did not abuse its discretion when it precluded defendant from introducing evidence of the complainant's earlier shooting incident.

Defendant alternatively argues that in disallowing the details attendant to the complainant's 1998 convictions, the trial court denied him the right to cross-examine an adverse witness or to otherwise present a defense. In particular, defendant protests that the decision prevented him from effectively exposing the complainant's vulnerability to being prosecuted for possession of a firearm by a felon, see MCL 750.224f, and as providing the complainant with an incentive to lie to the police about whether he had a gun on the occasion in question. We disagree.

A criminal defendant has a constitutional right to present a defense. *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984), citing US Const, Ams VI & XIV and Const 1963, art 1, §§ 13, 17, and 20. This includes the right to confront adverse witnesses. US Const, Am VI; Const 1963, art 1, § 20. Witness credibility is always at issue, and may be attacked on cross-examination. See MRE 611(c). Accordingly, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998). However, "neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The right to present a defense extends to only relevant and admissible evidence. *People v Hackett*, 421 Mich 338, 354; 365 NW2d 120 (1984).

In this case, the trial court struck a reasonable balance between preventing the presentation of marginally probative information and respecting defendant's right to present a defense by disallowing the evidence detailing the complainant's 1998 convictions, while still allowing the defense to elicit that the complainant was not legally entitled to possess a gun. Defense counsel took full advantage of that nuanced ruling when, after the complainant denied that he had a gun on the night in question based on a matter of personal choice, counsel elicited the complainant's admission that he had told the police that it was illegal for him to possess a gun. Then, defense counsel included the following in closing argument:

> He said that, oh, he chooses not to have a gun. But, then, admitted that it
> would have been illegal for him to have a gun in that truck. It wasn't by choice.
> It was that he was prevented by law from having a gun in that truck, and that's a

very important fact that you need to consider and that the police should have considered.

The defense thus had, and took advantage of, an adequate opportunity to ensure that the jury understood that, if the complainant did have a gun as defendant alleged, he had a penal incentive to conceal that fact from the police. As a result, defendant's right to present a defense was not violated.

Defendant separately argues that the trial court impermissibly changed its mind and ruled that defendant would not be allowed to present the complainant's 1998 convictions. Defendant asserts, and the dissent agrees, that the trial court was persuaded by the prosecutor's offer of the two complainants' favorable polygraph test results and characterizes the prosecutor's actions in this regard as "misconduct." This is a two-step argument which asserts that the prosecution's reference to polygraph results was misconduct and that there was resulting prejudice because the trial court relied on such improper evidence. We find that the argument lacks merit because to prevail, defendant would have to satisfy both prongs and he fails to satisfy either one.

Initially, we do not agree with the characterization of the prosecutor's offer of the polygraph evidence, under the rubric of a motion to suppress evidence—which the trial court appropriately treated as a motion to reconsider its earlier decision to allow evidence of the complainant's earlier convictions—as "misconduct." Cf. *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003) ("A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence."). Instead, we observe nothing more than the court exercising its broad discretion to revisit an earlier ruling and then deciding the matter differently. See *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005) ("[A] trial court has unrestricted discretion to review its previous decision[.]"); *Kokx v Bylenga*, 241 Mich App 655, 659; 617 NW2d 368 (2000). Indeed, the trial court could have done so sua sponte, without any motion at all by the prosecution. See *United States v Jenkins*, 420 US 358, 362 n 3; 95 S Ct 1006; 43 L Ed 2d 250 (1975) ("[T]he judge apparently changed his mind after further deliberation, as was his prerogative . . . ."), overruled on other grounds by *United States v Scott*, 437 US 82; 98 S Ct 2187; 57 L Ed 2d 65 (1978); *Prentis Family Foundation*, 266 Mich App at 52-53.

Moreover, defendant cannot demonstrate prejudice, as defined by the trial court being exposed to the allegedly improper MRE 404(b) evidence and as a result, according to defendant, changing its mind but without revealing (indeed, by affirmatively misrepresenting) its reasons for such a reversal of a previous ruling. As we previously noted, a trial court is permitted to revisit and revise its earlier decisions. Moreover, in doing so here, the trial court expressly stated on the record that it was persuaded that the polygraph evidence should *not* be considered. Despite this express recognition by the trial court, the dissent concludes that the evidence nonetheless "likely affected the trial court's determination." We see no basis for finding that the trial court acted contrarily to what it said it was going to do. Indeed, a trial court is presumed to have followed the law absent proof to the contrary. *People v Farmer*, 30 Mich App 707, 711; 186 NW2d 779 (1971), citing *Wagar v Peak*, 22 Mich 368 (1871) and *Galitis v Bassett*, 5 Mich

App 382; 146 NW2d 708 (1966).[1]  And here there is no proof that the court considered the polygraph evidence when it made its decision.  This situation is analogous to the circumstances in *Farmer*, in which we stated:

> Although the contested part of the statement was not proper evidence for the court to consider and should have been deleted, we cannot say it was reversible error in view of the fact that the trial judge has ruled that the inclusion of the improper reference to other crimes in defendant's statement was not considered by her in determining guilt and was, therefore, not prejudicial to the defendant.  Defendant in effect has asked this Court to inform the trial judge that she, herself, was prejudiced and did not follow the law in this case.  This, we cannot do. In the absence of proof to the contrary trial judges are presumed to follow the law. [*Farmer*, 30 Mich App at 710-711; see also *People v Vasquez*, 39 Mich App 573, 574; 197 NW2d 840 (1972).]

We similarly find no support for the conclusion here that the trial judge "herself, was prejudiced and did not follow the law in this case," *id.* at 711, and thus reject defendant's and the dissent's arguments to the contrary.  Simply put, the court here found the polygraph evidence not proper for consideration, and there is nothing to demonstrate that the court, despite it proclamations, considered the evidence.  And on the merits of the MRE 404(b) and MRE 403 determinations, we already have stated why nothing in the trial court's ruling constitutes an abuse of discretion, given the deferential standard of review.

## II.  BIASED JUROR

During jury selection, one juror disclosed that he had served in the Army Reserve for 12 years and was currently an engineer working for a defense contractor.  That juror answered in the affirmative when the trial court asked if he could be unbiased in connection with both "law enforcement" and "the police."  On appeal, defendant, citing an affidavit from his trial attorney, advises that post-trial discussions with the jurors brought to light that this juror "offered that he had been in Army CID[2] . . . and that he was familiar with the investigation of gunshot incidents," and also that this juror said "that in the Army CID they never tested for gunshot

---

[1] See also *People v Gaines*, 306 Mich App 289, 302 n 8; 856 NW2d 222 (2014); *People v Lanzo Constr Co*, 272 Mich App 470, 484-485; 726 NW2d 746 (2006); *People v Garfield*, 166 Mich App 66, 80; 420 NW2d 124 (1988) (all stating that trial courts are presumed to know the law).  And tacit with this long-standing presumption is that trial courts *follow* the law, or else their mere *knowledge* and this presumption would be of little significance.  Of course, here, there is no need merely to presume that the trial court was aware of the law, as it clearly stated on the record the proper standard and expressly stated that it was following it.

[2] These initials refer to the Army's "Criminal Investigation Command."  The "D" is retained as a historical reference to the original title of Criminal Investigative Division, which was formed during World War I.  See <https://www.cid.army.mil/assets/docs/CIDBrochure.pdf> (last visited February 20, 2019).

residue." Defendant protests that had this juror disclosed this information "the defense would have 'excused [him] as a law enforcement officer' by challenging him for cause and/or exercising a peremptory challenge."

"Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Benny Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). Further, "[a] juror may not impeach a verdict through testimony or affidavit." *Id.* at 258. However, a defendant may be entitled to a new trial where a juror's failure to disclose information that the juror should have disclosed denied the defendant an impartial jury. *Miller*, 482 Mich at 548-549.

In this case, defendant asserts that the juror in question "intentionally hid his law enforcement background from the court and the parties, thereby casting reasonable doubt on his impartiality to have served on this jury." Importantly, defendant does not specify any question that that juror was asked that he did not answer properly, other than to protest that general inquiries about ties to law enforcement prompted other jurors to disclose, e.g., relatives who were police officers, or in one case a firefighter. However, at the initial post-trial hearing on defendant's motion for a new trial, the prosecutor plausibly asserted that the juror's single year in "CID did not automatically equate to law enforcement." We agree that the subject juror may well have declined to volunteer that he had briefly worked in criminal investigations because he regarded questions about "law enforcement" as relating more to policing than investigating, and thus that, in light of the questions posed to him, the lack of such specification during jury selection did not constitute a failure to disclose requested information or otherwise indicate bias.

The prosecutor additionally pointed out that the subject juror's involvement with criminal investigations was merely "one stint" in a varied term of military service and pointed out that defense counsel was at liberty to ask about that juror's "full range of duties." We find this Court's opinion in *Johnson*, 245 Mich App 243, instructive. In *Johnson*, the defendant was charged and ultimately convicted of kidnapping and domestic violence; the defendant learned afterward that one of the jurors was a complainant in a domestic violence prosecution. *Id.* at 250. During jury selection, the juror admitted that she had been the victim of an assault but also assured the trial court that she could separate her personal experience from her consideration of the case. *Id.* at 250-251. The Court held that defendant was not entitled to a new trial where the defense did not inquire further into the matter at the time and the juror expressly stated that she could keep her personal experiences "separate" and be "fair and impartial." *Id.* at 256, 259. The *Johnson* Court noted that the juror answered the questions presented to her truthfully, which was distinguishable from other cases in which jurors answered questions falsely. *Id.* at 254, citing *People v DeHaven*, 321 Mich 327; 32 NW2d 468 (1948). Like the juror in *Johnson*, the juror at issue here answered questions truthfully and stated that he would be unbiased when it came to law enforcement.

Defendant points out that part of his self-defense strategy at trial was to make an issue of how the police conducted no tests to determine whether a firearm had been discharged from within the complainant's truck. As such, defendant argues that the juror's comment after trial that while in the CID, he "never tested for gunshot residue," implies that the juror thinks "that the testing of gunshot residue is always unnecessary in the investigation of gunshot incidents." Defendant elaborates that the juror's apparent "contempt" for gunshot residue testing indicated

"a disqualifying state of mind in that he had already formed at least one opinion that improperly influenced his verdict." However, defendant can only speculate whether the subject juror's report of never having conducted any residue testing in his limited time at the CID indicated that the juror personally lacked any confidence in the value of such testing, as opposed to the possibility that the occasion for such testing simply never arose in his experience, or that such testing was overlooked for other reasons unrelated to perceptions of the test's validity.

For these reasons, the trial court's decision to deny the motion for a new trial premised on the juror's failure to disclose a background in criminal investigations did not fall outside the principled range of outcomes.

## III. NEWLY DISCOVERED EVIDENCE

Additionally, defendant had sought a new trial on the ground that a new witness had come to his attention who would have provided compelling testimony favorable to the defense. The trial court held an evidentiary hearing to explore the matter further.

At the hearing, the new witness stated that at 12:30 or 1:00 a.m. on the night in question, he was in New Baltimore to visit a female companion he had recently met. After arriving at the friend's apartment, which was located on the north side of 23 Mile Road just east of Cypress St., she asked him to purchase some beer at a near-by convenience store. The witness testified that as he was about to turn onto 23 Mile Road from a driveway located on the north side of 23 Mile Road, he saw "two vehicles pass me." The witness further explained:

> When the two vehicles pass me [going west on 23 Mile Road], it looked like the truck bumped the car and the car pulled off to the side. Then, when the car pulled off to the side, as I proceeded to 23 Mile, the driveway, shots rang out. As shots rang out, I ducked in my car, and as they continued I got back up and sped off in the opposite direction [going east on 23 Mile Road].

The witness clarified that he saw "the glare of the gun as it was being fired" from the pickup truck and that his only thoughts after hearing the gunshots was to "duck and go." He explained that he had ducked down for just a few seconds before "pull[ing] off" from the driveway. And when the witness left the area, he turned left onto 23 Mile Road—away from the direction of the shooting—and headed east. He stated that he drove for 5 or 10 minutes until he reached the freeway, before calling his friend to tell her that because there were gunshots near the front of her apartment, he was not going to return. The witness added that he had had no further contact with the woman until about a year before the hearing, when she contacted him through social media and encouraged him to talk to the police about the incident. He admitted that in doing so, he provided the police detective with a false name and that he was reluctant to go to the police because of outstanding warrants.

Asked to specify where he saw a flash of light and heard gunfire, the witness answered that the subject vehicles were "[o]n the corner of Cypress and 23," elaborating further that the vehicles were not by the bus stop, but were "further east, away from the court," closer to Cypress and his friend's apartment. Asked if learning that shell casings were actually found in front of

the bus stop in front of the district court building would cause him to remember the positioning of the cars differently, the witness answered in the negative.

The prosecutor then introduced surveillance video. Specifically, the video was from an auto repair store located on the north side of 23 Mile Road, less than 0.3 miles east of Cypress Street.[3] The video depicted the vehicles involved in the confrontation right before the shooting occurred. Both vehicles are seen driving westbound on 23 Mile Road, passing the auto store at around 12:40 a.m. with defendant's vehicle passing first. The video presented at the hearing also showed what transpired shortly thereafter. Although the video captured both westbound and eastbound traffic on 23 Mile Road, it did not include any signs of the witness's white Cavalier leaving the area, as he described having happened.

MCR 2.611(A)(1)(f) authorizes a court to grant a motion for a new trial where the moving party's "substantial rights are materially affected" in connection with "[m]aterial evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial."

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

In this case, the trial court acknowledged that there was no dispute that the testimony that defendant was now offering constituted newly discovered evidence that could not have been discovered earlier with due diligence but concluded that the other criteria for obtaining a new trial on grounds of newly discovered evidence had not been met. The court reasoned:

> [The new witness's] testimony is cumulative and does not make a different result probable on retrial. . . . [T]estimony was introduced at trial alleging that the victim fired first and that defendant was defending himself. [The new witness's] testimony—that he saw a flash of light, heard gunfire, and assumed that the shots had come from the victim's truck because he saw a glare from there while hearing gunfire—is cumulative of that evidence. [The new witness also] testified that although he heard around five or six shots in total, he ducked down quickly after hearing the initial shots. Thus, although [he] saw the glare of a gun and heard gunshots, he did not actually observe an exchange of gunfire between defendant and the victim. Furthermore, the credibility of [the new] testimony was questionable due to . . . physical evidence presented at trial, such as the location

---

[3] Thus, because the driveway from which the witness said he exited was just east of Cypress Street, the driveway was even closer to the auto repair store.

-10-

of bullet casings, the lack of physical evidence of a second gun, and the absence of [the new witness's] vehicle on surveillance video in the area he claimed to have driven past at the time of the shooting.

Given the foregoing, the Court is satisfied that [the new witness's] testimony does not make a different result probable on retrial. Accordingly, because defendant has failed to demonstrate grounds that would support appellate reversal of his convictions or that the verdict resulted in a miscarriage of justice, defendant's motion for new trial is properly denied.

Defendant claims that the trial court erred in finding that the newly discovered evidence was cumulative and therefore unable to satisfy the second requirement under *Cress*. However, even assuming that the evidence was not cumulative, defendant cannot show that the trial court erred with respect to the fourth requirement under *Cress*, in which it found that the newly discovered evidence would not make a different result probable on retrial.

Regarding this requirement, the first task for a court is to determine whether the evidence is credible. *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018). "In making this assessment, the trial court should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony." *Id.* at 567. And the assessments are to focus on whether a reasonable juror could find the testimony credible on retrial. *Id.*

In disputing the trial court's conclusion that the "questionable" new testimony would not have likely changed the outcome of the trial, defendant objects to the court's observation that no white Cavalier appeared on the surveillance video footage. Defendant's argument is based on his assertion that "the trial court did not consider that there was no evidence on this record to establish that the DVD recording was calibrated to reflect the exact time." But whether the timestamp on the video displayed the correct time is not relevant since the video undisputedly portrays the circumstances at the time surrounding the shooting—whatever that actual time may have been. It is acknowledged that the video depicts the complainant's and defendant's vehicles right before the shooting occurred. In other words, it does not matter if the timestamp in the video was correct or "calibrated" when it said that defendant's vehicle passed the auto shop at 12:40:07 a.m. What is significant is that no vehicle attributable to the witness appears in the video after the complainant's and defendant's vehicles pass. The prosecutor argued that this tended to show that the witness had not travelled along 23 Mile Road at a time he said he did, i.e., right after the shooting. Because the question of whether the timestamp on the video was accurate or "calibrated" is not relevant, defendant has failed to show how the trial court clearly erred in finding that a reasonable juror would not find the witness credible. See *id.*

Defendant also argues that, in finding the new witness not credible, the trial court erred when it relied on the fact that the witness's testimony of where the shooting occurred did not comport with where the bullet casings actually were found. Although defendant offers a reason for why there may be an inconsistency—he suggests that the casings were fired where the witness said the shooting occurred but were subsequently moved by other passing vehicles after the shooting—it seems unlikely that *all* of the casings would have been moved in a similar fashion. Moreover, defendant's expert even testified that he was not sure how the casings had been damaged. Accordingly, we cannot conclude that the trial court clearly erred in finding the

new witness not credible when it relied on the fact that the casings were found in a location other than where the witness said the shooting had occurred.[4]

As a result, the trial court did not clearly err when it ultimately found, given the witness's lack of credibility, that there was not a reasonable probability on retrial that the witness's testimony would have produced a different outcome. Likewise, the court did not abuse its discretion in denying defendant's motion for a new trial.

## IV. CUMULATIVE ERROR

We reject defendant's argument that the cumulative effect of several errors denied him a fair trial. As discussed, defendant has failed to establish the existence of any error. Because there are no errors to aggregate, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999). Accordingly, defendant's claim fails.

Affirmed.

/s/ Jonathan Tukel
/s/ Jane M. Beckering

---

[4] Although not mentioned by the prosecution or the trial court, we further note that the witness testified that 23 Mile Road in that location was "a very narrow," two-lane road with no middle turn lane. However, the evidence shows that the street is a five-lane road with a middle turn lane. This inability of the witness to even accurately describe the road at issue further supports the trial court's credibility determination, at a minimum preventing defendant from demonstrating clear error on the part of the trial court's factual findings.